Argued and submitted November 9, 1987, reversed and remanded for new trial
June 15, 1988

## STATE OF OREGON,
*Respondent,*

*v.*

## STEVEN W. CORDRAY,
*Appellant.*
## (DA 333895-8612; CA A43591)

755 P2d 735

Philip A. Lewis, Portland, argued the cause and filed the brief for appellant.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals his conviction for prostitution. ORS 167.007. He asserts that his conviction is void because there is no written waiver of a jury trial. He also argues, *inter alia,* that the trial court erred in overruling his demurrer and in denying his pretrial motion to suppress evidence. We uphold the court's denial of the demurrer and motion to suppress, but reverse the conviction because there is no written waiver of jury trial.

■ We first address the lack of a written jury waiver. Consent to be tried without a jury requires an express written waiver under Article I, section 11, of the state constitution. *See also* ORS 136.001. The state agrees that there is no written waiver but cites *State v. Naughten,* 5 Or App 6, 480 P2d 448, *rev den* (1971), and argues that that is harmless error if there was no actual prejudice to the defendant. In *Naughten,* the record showed that the defendant had, with the advice of counsel, personally made an express oral waiver of his right to a jury trial. We held that the failure to execute a written waiver was harmless error. Here, the state asks us to take *Naughten* one step further and find harmless error on the basis of defendant's attorney's statement.[1] Although an attorney's statements are normally binding on a client, we decline to presume an express, knowing waiver of consent to be tried without a jury from defendant's failure to object to his attorney's actions. To hold otherwise would effectively circumvent the constitutional provision.

It is necessary to address defendant's assignments regarding his demurrer to the complaint and the pretrial

---

[1] After the court denied defendant's pretrial motions, the following occurred:

"The Court: Are you people ready to proceed?

"Defense Counsel: We are, your Honor.

"Prosecutor: Yes, your Honor. The state's ready.

"The Court: You waive the uh — the — I take it its going to be a court trial —

"Defense Counsel: Court trial, yes, your Honor.

"The Court: Did you sign —

"Prosecutor: State would waive opening.

"Court Clerk: Yes, he did."

motion to suppress evidence, because they are issues that will certainly arise on retrial.[2]

The demurrer stated that the complaint did not state an offense, because

"[t]he statute under which defendant is charged, ORS 167.007, violates defendant's rights to privacy, association, free speech and equal protection as guaranteed by the Oregon Constitution and the United States Constitution."

He argues each contention under a separate heading and we will follow that format.

He first contends that, because the gravamen of the offense is the act of agreeing to engage in sexual contact for a fee, the statute punishes oral communication. He concedes that we addressed that argument in *State v. Grimes,* 85 Or App 159, 735 P2d 1277, *rev den* 304 Or 56 (1987), but argues that that case is in error and solicits its demise. We decline the invitation.

He next argues, citing cases construing the federal constitution, that the rights to privacy of individuals include the right to engage in sexual activity for a fee. In *Bowers v. Hardwick,* 478 US 186, 106 S Ct 2841, 92 L Ed 2d 140 (1986), the Court upheld a Georgia statute which prohibits sodomy, even between consenting adults in a private home. The Court discussed its cases dealing with the concept of privacy embodied in the Fifth and Fourteenth Amendments and concluded that the concept is limited to activities related to marriage, family or procreation and that there was no connection between privacy interests and homosexuality. Whatever may be the limits of liberty or privacy interests, the Supreme Court has recognized, they do not go so far as to prohibit the states from criminalizing historically unlawful prostitution.

His final constitutional challenge is that ORS 167.002(5) defines "sexual contact," for the purposes of the prostitution statute, by classifying married persons differently than unmarried persons. He concludes from that definition

---

[2] Defendant raised six assignments of error. We address three of them. One of the remaining assignments challenges the sufficiency of the evidence and the other two relate to admission of evidence. In the posture of the case, as it was tried, none of the those claims has any merit. The posture may change on retrial.

that a married couple could agree to engage in "sexual contact" for a fee and be immune from prosecution. It follows, he argues, that the statute, on its face, denies the equal protection protected under Article I, section 20, of the Oregon Constitution. Even assuming that defendant's classifications are correct for section 20 analysis, they are not unreasonable. The court properly overruled the demurrer.

In his motion to suppress, defendant contended that all evidence or information received after two police officers "stopped" him should be suppressed, because there was no reasonable suspicion that he was involved in criminal activity. ORS 131.615.

The complaint charged that defendant "did unlawfully and knowingly agree to pay and [paid] a fee to engage in sexual conduct." Officer Shropshire testified during the suppression hearing that he and his partner, Officer Schmautz, were patroling a Portland residential area in which there had been a high degree of recent vice activity. While traveling on North Michigan Avenue, they saw defendant's vehicle parked on the opposite side of the street in "a dark and secluded area." Shropshire did not recognize the car as being from that neighborhood and decided to investigate. He pulled across a lane of traffic and parked "nose to nose" with the car, illuminating the interior of the vehicle.

As they approached defendant's car in their own vehicle, the officers observed defendant seated behind the steering wheel and a woman's head rising from the area of his lap. Defendant began moving in a manner consistent with his pulling up his pants. As the officers got out of their vehicle and moved closer on foot, they saw defendant zipping up his pants and buckling his belt. Shropshire walked to the driver's side of the vehicle while Schmautz moved to the passenger's side. Schmautz testified that he recognized defendant's companion as a woman whom he had recently arrested for prostitution. Shropshire advised defendant of his "Miranda" rights but told him that he was not then under arrest. Defendant indicated that he understood the advice. When Shropshire asked defendant what he was doing, he replied that he was "guilty" of "soliciting prostitution." During the ensuing conversation, defendant told the officers that a prophylatic was used and retrieved it from the back seat and handed it to them.

A stop is a "temporary restraint of a person's liberty," ORS 131.605(5), which a police officer may make if he reasonably suspects that a person has committed a crime. ORS 131.605(4) says:

" 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts as authorized in ORS 131.605 to 131.625."

In evaluating the lawfulness of a stop, we look to whether "the standard of reasonable suspicion has been met by the objective test of observable facts." *State v. Valdez,* 277 Or 621, 629, 561 P2d 1006 (1977); *State v. Madden,* 89 Or App 21, 747 P2d 367 (1987), *rev den* 305 Or 274 (1988); *State v. Kimmel,* 82 Or App 486, 728 P2d 894 (1986). In other words, we look to the facts actually known to the officer making the stop to see if they would justify a reasonable belief.

■     Defendant does not identify a particular moment when he believes the stop occurred. Nevertheless, an assumption underlying at least part of his argument is that it occurred when the police put their patrol vehicle in front of his car. The best argument that he could make in support of that is that the officers restrained his liberty by positioning their vehicle so as to impede his ability to pull out onto the street. We considered a similar contention in *State v. Porter,* 38 Or App 169, 589 P2d 1156 (1979). There, a police officer parked his car behind the defendant's vehicle in a parking lot, making it impossible for him to leave the area without maneuvering around the police car. We said:

"It is conceivable that the position of an officer's car could be used as a restraint on an individual's liberty if, for example, the individual was prevented from continuing to his destination, or in some other way forced 'to alter his course of conduct.' But, here, the defendant had been parked for an hour. He gave no indication of an intention to move. He was free to move his car, although he would have had to maneuver around the police car. The action of the officer in parking his car near the defendant, approaching the defendant, greeting him, and asking him who he was did not restrain defendant's liberty within the meaning of ORS 131.605(5)." 38 Or App at 171-72. (Citation omitted.)

Here, just as in *Porter,* defendant was already stopped and there was no indication that he wished to move at the time the

police officers parked their vehicle in front of his car. We conclude that a stop did not occur until the officers approached defendant and began reciting his rights to him.

■ At that time, the police had information to support a belief of prostitution activity: (1) defendant's companion's head was observed rising from the area of defendant's lap and defendant was seen pulling up and zipping his pants; (2) defendant's companion had been previously arrested for prostitution; (3) defendant's car was parked in a dark and secluded location in a neighborhood that had been the focus of recent prostitution complaints. Those facts provide a reasonable, articulable basis under all the circumstances for suspecting that defendant had committed a crime. *See State v. Norman,* 66 Or App 443, 674 P2d 626, *rev den* 296 Or 712 (1984). The court properly denied the motion to suppress.

Defendant also argues that his statements to the police should have been suppressed, because there is no proof that he was fully advised of his constitutional rights. He did not raise this issue at the pretrial suppression hearing. In fact, the record indicates that his attorney essentially conceded that he was fully "Mirandized."[3] This issue was not adequately preserved for our review and we decline to address it.

Reversed and remanded for a new trial.

---

[3] Defendant's attorney made these remarks during the pretrial suppression hearing:

"As for my client's statements. Yes, there was evidence that he was *Mirandized* and that — there's evidence that he seemed to understand what those rights were. There is no evidence of a waiver of those rights. And simply responding to questions after you've been given or read your *Miranda* rights does not constitute an adequate waiver. A person has to be asked, 'Are you waiving your rights' or say something to indicate that they wish to give up those rights. And simply reading those rights off does not constitute a waiver."