Argued and submitted November 19, 1990, reversed and remanded March 13,
reconsideration denied August 14, petition for review denied October 29, 1991
(312 Or 235)

STATE OF OREGON,
*Appellant,*

*v.*

MICHAEL V. MESENBRINK,
*Respondent.*

(C89-06-33124; CA A62831)

807 P2d 319

Katherine H. Waldo, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were

Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Vernon Cook, Gresham, argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

WARREN, P. J.

## WARREN, P. J.

Defendant was charged with driving under the influence of intoxicants and felony driving while suspended. ORS 813.010; ORS 811.175(1). The trial court granted defendant's motion to suppress, and the state appeals. We reverse.

Shortly before midnight on June 10, 1989, defendant was on his way home when his headlights stopped working. He pulled into a service station on the corner of 181st Ave. and Halsey St. in Gresham to try to have them repaired. The attendant noticed that defendant smelled of alcohol, his speech was slurred and he staggered. The attendant could not repair the headlights and told defendant that he could park his car for the night by a fence on the service station's lot. He parked his car in front of a phone booth and unsuccessfully tried to contact his wife to get a ride home. He returned to his car to wait before trying again. The windows were rolled up and the motor was running to keep the car heater on, because it was a cold night.

Concerned that defendant might try to drive while intoxicated, the attendant called the police. He identified himself and gave his location, a description of defendant's car and his opinion that defendant was driving under the influence. He said he thought defendant was about to leave. On his radio, a deputy sheriff heard a request for a police officer to investigate. He decided to respond, because he was close to the location. When the deputy arrived at the service station, the station attendant pointed to defendant's parked car, which matched the description broadcast over the radio. The deputy then pulled up and parked behind the car, close enough so that defendant would not have been able to drive away had he chosen to do so. The deputy got out and walked to the car and motioned for defendant to roll down his window. He detected a strong smell of alcohol and noticed that defendant appeared intoxicated. The deputy asked for his license, and defendant responded that he was waiting for his wife to come and pick him up. A record check revealed that he had no license because of prior felony convictions for driving while suspended. The deputy gave defendant *Miranda*-type warnings, had him perform a series of field sobriety tests and arrested him.

Defendant moved to suppress, arguing that the deputy "stopped" him when he stopped the patrol car close

behind defendant's car and that the deputy did not have a reasonable suspicion to justify the stop. The trial court agreed and granted defendant's motion. The state contends that the court erred in holding that the deputy stopped defendant and, in the alternative, that, if there was a stop, the deputy had reasonable suspicion to justify it.

■ ■ The first question is whether the deputy's contact with defendant became a "stop." ORS 131.605(5) defines a "stop" as a "temporary restraint of a person's liberty by a police officer lawfully present in any place." Our cases have held that a stop occurs when an officer's conduct constitutes a show of authority sufficient to lead a reasonable person to believe that he is not free to leave. *State v. Horton,* 86 Or App 199, 738 P2d 609 (1987); *State v. Smith,* 73 Or App 287, 698 P2d 973 (1985). The question of whether a stop occurred must be determined under the facts of each case. *State v. Kennedy,* 290 Or 493, 624 P2d 99 (1981). The facts in this case show that defendant was in his parked car, next to a fence and in front of a phone booth. The deputy pulled up behind him, boxing him in, and then walked up to his car and motioned for defendant to roll down his window.

The state contends that those facts do not constitute a stop. It argues that, although defendant may not have been able to drive away, he was free to get out of his car and walk away. It also argues that the deputy's nonverbal request that defendant roll down the window was the equivalent of asking, "Do you mind if I talk to you?" and that defendant was free to leave the window rolled up, just as a person on the street who is approached by a police officer is free to walk away.

■ Although the state's characterization of the facts is plausible, we agree with the trial court's conclusion that a reasonable person in defendant's position would not have believed himself free to leave. A law enforcement officer's approaching someone does not create a stop in and of itself. *See, e.g., State v. Woods,* 102 Or App 671, 796 P2d 1209, *rev den* 310 Or 422 (1990). However, when an officer's vehicle blocks a vehicle in a manner that would prevent it from being driven away, a stop occurs. *See State v. LaFrienier,* 97 Or App 672, 776 P2d 1325 (1989); *State v. Deptuch,* 95 Or App 54, 767 P2d 471, *modified* 96 Or App 228, 772 P2d 442 (1989). When the officer has parked some distance away or not cornered the

car, we have concluded that there was no stop. *See, e.g., State v. Calhoun,* 101 Or App 622, 792 P2d 1223 (1990); *State v. Cordray,* 91 Or App 436, 755 P2d 735 (1988).

■ The next question is whether the stop was valid. The trial court concluded that there were not enough objective facts to give the deputy a reasonable suspicion that a crime had occurred. In *State v. Walsh,* 103 Or App 517, 798 P2d 262 (1990), *rev den* 311 Or 60 (1991), we held that information possessed collectively by the dispatcher and the police officer can be used to determine if reasonable suspicion existed. Here, the dispatcher was told by a named informant that a man driving a large green Dodge was intoxicated at 181st Ave. and Halsey St. and that he was going to leave. When the deputy arrived, he saw a large green Dodge parked on the lot, with its motor running and an attendant directing him to that car.

In *State v. Black,* 80 Or App 12, 721 P2d 842 (1986), we listed three questions for determining whether an informant's tip is sufficient to create reasonable suspicion: Did the caller leave his name; did he indicate how the information was received, whether by personal observation or by hearsay; and did the law enforcement officer's own observations corroborate the tip? Here, there was a named informant, speaking from personal observation, and the deputy's own observations on the scene corroborated the tip. The totality of the circumstances justified a reasonable suspicion that defendant had committed the crime of driving under the influence.

Defendant argues that there was no showing that the service station was "premises open to the public" and that the deputy violated defendant's privacy interest in the premises of the service station. Under the state's assignment of error, that argument lacks merit.

Reversed and remanded.

**RIGGS, J.,** specially concurring.

The majority concludes that a stop occurs "when an officer's vehicle blocks a vehicle in a manner that would prevent it from being driven away * * *." 106 Or App at 309. I disagree that the conclusion applies to the facts of this case, because defendant had no intention of driving away.

In order for the position of the officer's car to operate

as a restraint sufficient to constitute a "stop," the defendant must have been "prevented from continuing to his destination, or in some other way forced 'to alter his course of conduct.'" *State v. Porter,* 38 Or App 169, 171, 589 P2d 1156 (1979). (Citation omitted.) Defendant was not prevented from continuing to his destination. His car was parked, and he gave no indication that he wished to move when the officer approached him and gestured for him to roll his window down. He told the officer that he was waiting for his wife to come and pick him up. The position of the officer's car in no way forced defendant to alter his course of conduct, because he had no immediate intention of going anywhere. *See State v. Cordray,* 91 Or App 436, 755 P2d 735 (1988). Accordingly, no stop occurred.