Argued and submitted April 5, vacated and remanded August 23, 2006

# STATE OF OREGON,
*Respondent,*

*v.*

# NATHANIEL TAYLOR GUEST,
*Appellant.*

## 036108FE; A127471

142 P3d 482

Jesse Wm. Barton argued the cause and filed the brief for appellant.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Landau* and Ortega, Judges.

SCHUMAN, P. J.

---

* Landau, J., *vice* Ceniceros, S. J.

## SCHUMAN, P. J.

Defendant was convicted of delivery of a controlled substance, *former* ORS 475.992 (2003), *renumbered as* ORS 475.914 (2005). Although he pleaded guilty, the plea was conditional; as permitted by ORS 135.335(3), he reserved his right to appeal from the judgment in order to obtain appellate review of the trial court's denial of his motion to suppress evidence. This is that appeal. Because we conclude that the trial court declined to resolve a conflict in the evidence that, had it been resolved in defendant's favor, would have required suppression of the disputed evidence, we remand for further factfinding.

The relevant facts are few and, except as noted, undisputed. At approximately 10:20 p.m. on November 21, 2003, Jackson County Sheriff's Deputy Denton was driving past a small park called Gold Nugget Wayside. He had driven by the park earlier and had noticed a pickup truck and another vehicle in its small parking lot; when he saw that they were still there, he pulled his patrol car into the lot. According to his testimony, which the trial court found to be credible, he parked far enough behind the vehicles to allow both of them to pull away and leave the lot. According to the testimony of another witness, whom the trial court also found to be credible, the officer parked his patrol car so as to block the truck, in which defendant and the witness were sitting, thereby preventing it from leaving. In any event, the officer got out of his patrol car and walked toward defendant's truck. As he approached, he saw something fall from the driver's side window and smelled what he recognized to be burnt marijuana.

Denton then began to question defendant and his passenger. He asked them for identification. Defendant handed over his driver's license, which Denton took and did not return during the encounter.[1] Denton also asked defendant if he had any "guns, knives, bombs, anything like that"

---

[1] The state contends in its brief that "the officer held defendant's identification in his hand and ran a records check on it; he held the identification for no more than 30 seconds." In support of that assertion, the state cites two pages from the transcript. Neither supports the state's contention; in fact, they contradict it. One of the cited exchanges is as follows:

"Q [by defense attorney]: And did you ask for his driver's license?

in the truck; defendant responded that he had a loaded pistol behind the rear seat. Denton then asked defendant and his passenger to step out of the truck, and, when they did, he asked defendant if the object he had seen falling from the window was marijuana. Defendant admitted that it was, and also that there was more of it in the car. A search ensued, yielding marijuana in a tin canister, a plastic sandwich bag, and a duffel.

■     Defendant's argument is as follows: Denton stopped defendant, at the latest, when Denton pulled in behind defendant's pickup truck and got out of his patrol car. The stop was unlawful because a stop must be justified by an officer's reasonable suspicion of criminal activity and, at that time, Denton did not have such a suspicion. At most, he suspected that defendant was parked in a closed county park; in fact, the park was federally owned and not closed, and Denton's belief to the contrary was not reasonable. All of the relevant evidence was derived from the unlawful stop and must be suppressed.

     The state, for its part, contends that Denton did have a reasonable, albeit concededly erroneous, suspicion that

---

"A [by officer]: Yeah.

"Q: What did you do with it?

"A: Held it in my hand and ran it on the radio.

"Q: Held it in your hand. Did you give it back to him?

"A: No."

The other cited exchange is as follows:

"Q [by prosecutor]: How long had you had his driver's license in your hand when he admitted to you there was a loaded gun under the seat?

"A [by officer]: A couple seconds, thirty seconds at the max.

"Q: So you weren't retaining his driver's license?

"A: No, I wasn't gonna keep it.

"[Prosecutor]: No further questions.

"Q [by defense attorney on re-cross examination]: You did keep it, though, didn't you?

"A: (No audible response).

"Q: After you took it from him and asked him some questions, you kept his driver's license?

"A: You're right. I held it on my person."

defendant was committing criminal trespass, thereby rendering the stop lawful from its inception; and that, in any event, Denton did not block defendant's truck, did not engage in any show of force, and did not stop defendant until after having smelled the marijuana, at which point he undeniably had a reasonable suspicion of criminal activity.

To resolve this case, we must first determine whether the state is correct in asserting that the officer had reasonable suspicion when he first pulled into the parking lot. If he did, then, regardless of the precise moment that a stop thereafter occurred, it was lawful, ORS 131.615(1), and our inquiry would be at an end.

■ "Reasonable suspicion" has a subjective and an objective component; a police officer must subjectively believe that the stopped person committed or is about to commit a crime, and that belief must be objectively reasonable. *State v. Belt*, 325 Or 6, 11-12, 932 P2d 1177 (1997). In the present case, the state, which has the burden of establishing the existence of reasonable suspicion, *State v. Miears*, 166 Or App 228, 235, 999 P2d 493, *rev den*, 331 Or 192 (2000), has not met that burden with respect to either component. There is evidence in the record to indicate (and the court found as fact) that Denton believed that defendant was in a county park and that the park was closed at the time, but there is no evidence that Denton knew or believed that being in a closed park amounted to a crime. His only testimony regarding his belief consists of two statements: "It was my impression that the park was a county park and closed after dark," and, in response to a question on cross-examination, "I've read in your motion that you think it's a BLM park. I'm not exactly sure which is county/BLM." And even if we could read that testimony, in context, to indicate that he believed a crime was occurring because defendant was in a county park (and hence closed), there is no evidence to indicate that such a belief was reasonable. Denton was never asked, and never explained, why he thought that the park was county property or why he thought that county parks closed at dark (if indeed they do— a fact not inferable from the record). The only testimony on the subject, in fact, indicates that if he held such a belief, it was *not* reasonable. The park was identified by a sign clearly

displaying a Bureau of Land Management logo, and, although it was dark when the events leading to defendant's arrest occurred, Denton had been a Jackson County deputy for five years, most of them on patrol. We therefore conclude that, when Denton pulled into the Gold Nugget Wayside park, he did not have a reasonable suspicion that defendant was committing or was about to commit a crime.

■ That conclusion compels us to determine whether Denton stopped defendant immediately after pulling into the lot. If that act amounted to a stop, then it was unlawful, because, as we have demonstrated above, Denton did not have reasonable suspicion at the time. If the stop was unlawful, the ensuing conversation, consent, and search were also unlawful. *State v. Hall*, 339 Or 7, 115 P3d 908 (2005). If, on the other hand, Denton did not stop defendant by parking behind him, then, as the state argues and the trial court concluded, no unlawful stop ever occurred; Denton's actions did not amount to a stop—that is, significant restraint on defendant's liberty or freedom of movement, *State v. Holmes*, 311 Or 400, 409-10, 813 P2d 28 (1991)—until *after* he had reasonable suspicion of criminal activity.

The question whether Denton stopped defendant upon first pulling into the parking lot depends, in turn, on whether Denton's patrol car blocked defendant's truck, preventing him from leaving the scene. *State v. Greer*, 93 Or App 409, 412, 763 P2d 158 (1988) (officers stop a defendant when they "seal[ ] off" his or her vehicle). On that question, there was conflicting testimony. Denton testified that he parked so far behind defendant that defendant could freely pull out of the lot. Defendant's passenger, Armstrong, testified that defendant was blocked in. In its order denying defendant's motion to suppress, the trial court wrote:

> "The court finds that the testimony of Deputy Denton is truthful and reliable. The witness for the defense, Mr.Thomas Armstrong, also appeared to be truthful in his testimony."

The court continued:

> "The court finds that although there is some dispute as to how close the officer's vehicle was parked behind the

defendant's vehicle and whether that would have prevented the defendant from driving away, that issue is not controlling. The officer decided to contact the defendant because he believed, probably erroneously, that the park was closed."

As we reason above, however, the issue that the court declined to decide *is* controlling.

Had the court found that Armstrong's testimony was more credible or that the evidence was in equipoise, we would conclude that the state had not met its burden and dispose of the case by reversing and remanding. However, because the court erroneously believed that no resolution was necessary, we remand with instructions to determine, if possible, whether Denton's patrol car blocked defendant's truck. If such a determination is not possible, or if it is possible and the court determines that the truck was blocked, then the court must allow defendant's motion to suppress. If, on the other hand, the court can determine that defendant's truck was not blocked, then it shall reenter the original judgment.

Vacated and remanded.