Argued and submitted April 29, reversed and remanded July 2, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STACEY LANELL THACKER,
*Defendant-Appellant.*

Marion County Circuit Court
11C47914; A151384

331 P3d 1036

Anne Fujita Munsey, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Pamela J. Walsh, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

GARRETT, J.

## GARRETT, J.

Defendant was charged with driving under the influence of intoxicants (DUII), ORS 813.010, misdemeanor driving while suspended, ORS 811.182, and refusal to take a breath test, ORS 813.095. Defendant moved to suppress evidence on the ground that she was unlawfully stopped. After the trial court denied the motion, defendant entered a conditional guilty plea to all of the charged counts, reserving her right to appeal the ruling on the motion. On appeal, the sole issue is whether the trial court erred in denying the motion to suppress. We conclude that it did. Accordingly, we reverse and remand.

In reviewing a trial court's denial of a motion to suppress, we are bound by the court's findings of historical fact so long as they are supported by evidence in the record. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We review the trial court's legal conclusions for legal error. *Id.*

In this case, there is no dispute as to the facts, which we take from the trial court's letter opinion. Officer Young, of the Keizer Police Department, was notified by his dispatch officer that a caller had reported a possible case of DUII involving a burnt orange Nissan pickup truck with a canopy. The caller reported that the vehicle was being operated by a male driver and that a female passenger, "Stacey," might be the subject of a warrant for her arrest. The caller said that the vehicle was headed to 3390 Cherry Avenue.

Young went to that address and saw an orange pickup truck pull into the driveway. Young drove his marked patrol car into the driveway behind the truck. Defendant drove all the way to the end of the driveway, which was 30 to 40 feet in length, and stopped with the truck resting against a portion of an awning attached to the house. Young stopped less than one car length behind the truck without having activated his vehicle's overhead lights or spotlight. He got out of his car and approached the driver's side door of the truck. Defendant was behind the wheel, whom Young recognized from previous interactions and believed was the "Stacey" reported to have an outstanding arrest warrant. Young asked defendant for her driver's license; she replied that she did not have it with her but that it was probably

inside the house. She stepped out of the truck and said that she would retrieve the license from the house. Young instructed her to remain with him. At that point, he noticed the smell of alcohol and observed that defendant was "swaying." Young cited defendant for DUII.

Defendant moved to suppress on the ground that Young lacked reasonable suspicion of a crime at the time that he stopped defendant. The arguments before the trial court focused on exactly when the stop occurred. Defendant argued that she was stopped at the moment that Young followed her into the driveway and parked in a manner that blocked her truck from leaving. The state argued that defendant was not stopped until she attempted to enter her house and Young instructed her to remain outside.

In its letter opinion, the trial court determined that Young did not have reasonable suspicion that any crime had been committed at the time that he pulled into defendant's driveway and stopped behind her truck. The court ruled, however, that defendant was not "stopped" until she was prevented from entering her house, by which time Young had probable cause to arrest her for failure to carry and present a driver's license. Accordingly, the court denied defendant's motion.

Our analysis of the trial court's legal conclusion begins with Article I, section 9, of the Oregon Constitution, which protects individuals against unreasonable searches and seizures.[1] A seizure occurs: "(a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) if a reasonable person under the totality of the circumstances *would* believe that (a) above has occurred." *State v. Ashbaugh*, 349 Or 297, 316, 244 P3d 360 (2010) (emphasis in original). As the Supreme Court explained in *State v. Backstrand*, "[w]hat distinguishes a seizure (either a stop or an arrest) from a

---

[1] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

constitutionally insignificant police-citizen encounter 'is the imposition, either by physical force or through some "show of authority," of some restraint on the individual's liberty.'" 354 Or 392, 399, 313 P3d 1084 (2013) (quoting *Ashbaugh*, 349 Or at 309).

Defendant argues that she was seized when Young entered her driveway, parked his patrol car less than a car length behind her truck, and "effectively boxed it in." The state argues that the seizure did not occur until a few moments later, when Young prevented defendant from entering her house. Defendant does not dispute that, if the stop occurred when the state says that it did, then the stop was lawful because Young then had probable cause to arrest defendant. Similarly, the state concedes that, if the stop occurred when defendant says that it did, then the stop was unlawful because Young lacked reasonable suspicion of any wrongdoing at that time. Thus, the only issue in this appeal is when the seizure occurred.

Defendant directs us to cases in which we have held that a "stop" was effected when a police officer blocked a defendant's vehicle so as to prevent it from leaving. For example, in *State v. Mesenbrink*, 106 Or App 306, 309-10, 807 P2d 319, *rev den*, 312 Or 235 (1991), we noted:

> "[W]hen an officer's vehicle blocks a vehicle in a manner that would prevent it from being driven away, a stop occurs. *See State v. LaFrienier*, 97 Or App 672, 776 P2d 1325 (1989); *State v. Deptuch*, 95 Or App 54, 767 P2d 471, *modified*, 96 Or App 228, 772 P2d 442 (1989). When the officer has parked some distance away or not cornered the car, we have concluded that there was no stop. *See, e.g., State v. Calhoun*, 101 Or App 622, 792 P2d 1223 (1990); *State v. Cordray*, 91 Or App 436, 755 P2d 735 (1988)."

The state contends that the proper analysis is somewhat more nuanced. The state agrees that Young's actions "blocked defendant's ability to drive the truck out of the driveway." In the state's view, however, the correct inquiry is not simply whether a defendant's vehicle was blocked, but, instead, whether the defendant was actually prevented from continuing on to a destination or forced to alter a course of conduct. Here, the state points out, defendant voluntarily

drove into her own driveway, and there was no evidence that she wished to leave.

The state relies principally on *State v. Porter*, 38 Or App 169, 589 P2d 1156 (1979), and *State v. Norman*, 114 Or App 395, 835 P2d 146 (1992). In *Porter*, we held that no stop occurred where the defendant had been parked for an hour in a public parking lot, he "gave no indication of an intention to move[,]" and he "was free to move his car, although he would have had to maneuver around the police car." 38 Or App at 171. In *Norman*, a police officer followed the defendant into his driveway and stopped his patrol car behind the defendant's vehicle. 114 Or App at 397. The defendant got out of his vehicle, walked toward the patrol car, and said, "I suppose you fellows want to talk to me." *Id*. We held that

"[t]he mere act of following defendant into the driveway did not constitute a stop. [The officer] did not use his car's overhead lights. Defendant got out of his car, walked toward the officer and initiated a conversation with him. [The officer] had not restrained defendant either by force or by a display of authority."

*Id*. at 400.

Neither *Porter* nor *Norman* is squarely on point. In *Porter*, the defendant's vehicle was not actually blocked in the parking lot; to the contrary, we expressly noted that the defendant "was free to move his car," albeit with some maneuvering required. 38 Or App at 171. Similarly, in *State v. Cordray*, 91 Or App 436, 440, 755 P2d 735 (1988), which cited *Porter*, we held that no stop occurred where police pulled up "nose to nose" with the defendant's parked vehicle on a public street. We did observe that there was "no indication" that the defendant "wished to move at the time the police officers parked their vehicle in front of his car," *id*. at 441-42, but it was clear, as in *Porter*, that the defendant's vehicle was not actually prevented from leaving.

Although *Norman* is, in some ways, a closer parallel to this case because it involved an officer following a vehicle into a residential driveway, the court in *Norman* did not say whether the defendant's vehicle was actually blocked from leaving. In addition, we took pains to observe that the

*defendant* initiated the encounter by approaching the officers' vehicle. 114 Or App at 400.

More recent cases support defendant's argument that the focus of the inquiry is on whether the defendant's vehicle was actually blocked, not on whether the defendant subjectively intended to leave. In *State v. Guest*, 207 Or App 395, 397, 142 P3d 482 (2006), an officer pulled up next to the defendant's parked car in a public park. The defendant and a passenger appeared to have been smoking marijuana. *Id.* Testimony conflicted as to whether the defendant's vehicle was physically prevented from leaving. *Id.* We held that "[t]he question whether [the officer] stopped defendant upon first pulling into the parking lot depends, in turn, on whether [the] patrol car blocked defendant's truck, preventing him from leaving the scene." *Id.* at 400. Because the trial court had not made a finding on that issue, we remanded. *Id.* at 401. There was no discussion of whether the defendant had *wanted* to drive away; the "controlling" question was whether he could have. *Id.*

In *State v. Aronson*, 247 Or App 422, 424, 271 P3d 121 (2011), *rev den*, 352 Or 33 (2012), a deputy watched the defendant, who appeared to be intoxicated, drive into a shopping center parking lot and park. The deputy stopped his patrol car at an angle behind the defendant's vehicle, "leaving between one and a half and three car lengths between the two cars. The distance between the two cars would have allowed defendant to pull out of the parking space had he chosen to do so." *Id.* We held that no stop occurred, reasoning that "the officer did not park his car in a way that prevented defendant from leaving—there was sufficient space between the patrol car and defendant's vehicle that defendant could have backed out of the parking space and driven away." *Id.* 427-28.

In light of the foregoing, we agree with defendant that the stop occurred when Young followed her to the end of her driveway and parked less than one car length behind her truck such that the truck was prevented from leaving. The state's emphasis on defendant's subjective intent is inopposite in this case. Although the court did consider the defendant's intent in *Porter* and *Cordray*, neither of those

cases involved a situation in which the defendant's vehicle was actually blocked. Thus, those cases held only that a defendant who could have driven away, and did not, was not stopped. Here, as the state acknowledges, defendant was physically prevented from driving away. That restraint on her liberty and freedom of movement was significant enough to effect a stop for purposes of Article I, section 9. *Ashbaugh*, 349 Or at 316. Because, as the state concedes, no reasonable suspicion existed at that time, the stop was unlawful, and the trial court therefore erred in denying defendant's motion to suppress.

Reversed and remanded.