NOT DESIGNATED FOR PUBLICATION

No. 122,838

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ERIC E. MCFADDEN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN and ERIC WILLIAMS, judges. Opinion filed September 3, 2021. Affirmed.

*Jennifer C. Bates*, of Kansas Appellate Defender Office, for appellant, and *Eric E. McFadden*, appellant pro se.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., CLINE, J., and WALKER, S.J.

PER CURIAM:  Eric E. McFadden appeals from his jury convictions of five counts of child abuse, two counts of aggravated indecent liberties with a child, and one count of rape, all of which occurred while McFadden lived with his girlfriend, K.M., and her children. Following the verdicts, the district court sentenced McFadden to three consecutive life sentences, each one a Hard 25, plus an additional 179 months' imprisonment. McFadden raises three issues on appeal:  1) the district court abused its discretion when it admitted the children's videotaped interviews during trial, 2) the

1

district court erred when instructing the jury regarding the burden of proof, and 3) the district court erred by giving the jury verdict forms that listed "guilty" before "not guilty." After a careful review of the record, we find that none of McFadden's claims are meritorious and therefore we affirm his convictions and sentences.

FACTS

Around March or April of 2017, McFadden moved in with his girlfriend, K.M., in a house in Wichita. K.M. had 10 children, 3 of whom she had with McFadden. All the children, except T.A., K.M.'s oldest child, lived with McFadden and K.M. This case only involves six of the children—T.J.H., J.M.H., A.L.H., E.S.S., J.J.H., and K.H.M.

During the time period from January through April of 2018, K.M. worked from approximately 3 or 4 p.m. until 9 p.m. or 12 a.m. five or six days per week. While she worked, McFadden would watch the children or the older children would watch the younger children. On April 13, 2018, some of the children devised a plan for T.J.H., one of K.M.'s older children, to go to the police station while K.M. was at work. The other children told McFadden that T.J.H. ran away and pointed McFadden in the opposite direction so T.J.H. would have time to reach the police station.

When T.J.H. reached the nearby police station, he told police officers that McFadden had physically abused him and his siblings. T.J.H. said that McFadden hit him and his siblings with belts and extension cords nearly every day once the children got out of school. T.J.H. also told officers that McFadden had sexually abused his twin sisters, J.M.H. and A.L.H.

While T.J.H. was talking to police, McFadden went to K.M.'s work and asked her if she had seen T.J.H. K.M. told McFadden she had not seen him. The two then left K.M.'s work, but police arrived before they could leave the parking lot. McFadden was

2

placed under arrest, and police informed K.M. that one of the children reported that McFadden had been abusing the children physically and sexually.

Police officers also went to McFadden and K.M.'s home and took the children to the Wichita Children's Advocacy Center so they could be interviewed. Police and social workers recorded the interviews. After those interviews, forensic nurses examined the children.

On April 17, 2018, the State charged McFadden with five counts of abuse of a child, all severity level 5 person felonies; three counts of aggravated indecent liberties with a child, all off-grid person felonies; two counts of rape, both off-grid person felonies; and one count of aggravated criminal sodomy, also an off-grid person felony. Counts 1, 2, 3, and 4—aggravated indecent liberties with a child, rape, aggravated sodomy, and rape, respectively—concerned J.M.H., who was 11 years old at the time. Counts 5 and 6, both aggravated indecent liberties, concerned A.L.H., who was also 11 years old. Counts 7-11, all abuse charges, concerned T.J.H., J.M.H., E.S.S., J.J.H., and K.H.M., respectively. McFadden pled not guilty to all charges and requested trial by jury.

During the jury trial, T.J.H. testified about the abuse he faced from McFadden. Similarly, J.M.H. testified about McFadden's abuse. She also testified about McFadden asking her if she wanted to make "deals," which meant that she could elect to perform sexual activities instead of being hit with the belts and extension cords. J.M.H. specifically described the first time McFadden touched her genital area, as well as another time McFadden made her have intercourse with him. She could not specifically remember whether McFadden made her have sex with him on the day T.J.H. went to the police, but she did remember being examined by a nurse at the hospital.

The forensic nurse testified about her examination of J.M.H. She said that J.M.H. described the way in which McFadden had sexually assaulted her. The nurse located

3

abrasions in J.M.H.'s genital area, which was indicative of blunt force trauma. The forensic nurse also collected swabs from various parts of J.M.H.'s body as part of the examination. A forensic scientist testified to the statistically extremely high probability that the DNA found on J.M.H.'s genital area and abdomen was McFadden's.

Each of the other children also testified to how McFadden abused them. Additionally, A.L.H. testified about the times McFadden made her perform sexual acts on him. Like J.M.H., McFadden also made "deals" with A.L.H.—she could either get hit or perform sexual acts. The same forensic nurse that examined J.M.H. also examined A.L.H. Like with J.M.H., the forensic nurse testified that A.L.H. had an abrasion in her genital area. The nurse said A.L.H. described to her the times McFadden touched her and attempted to have sex with her, as well as how McFadden physically abused her.

Law enforcement officers also testified about what the children told them. Additionally, the State admitted the videotaped interviews from T.J.H., J.M.H., A.L.H., E.S.S., J.J.H., and K.H.M. McFadden did not object to any of these videotaped interviews being shown to the jury.

At the conclusion of the trial, the jury found McFadden guilty on all five counts of abuse of a child. The jury also found him guilty of one count of aggravated indecent liberties with a child and one count of rape regarding J.M.H. The jury convicted McFadden of one count of aggravated indecent liberties with a child regarding A.L.H. However, the jury acquitted him on all remaining counts. The district court subsequently sentenced McFadden to three consecutive life sentences, each a Hard 25, for his two aggravated indecent liberties with a child and rape convictions, and an additional consecutive 179 months' imprisonment for his child abuse convictions.

McFadden has timely appealed his convictions and sentences.

ANALYSIS

*Admission of the videotaped interviews with the children*

In his first issue on appeal, McFadden argues that the district court erred when it allowed the videotaped interviews of the children to be played before the jury. Specifically, McFadden contends that the videotaped interviews were cumulative and served only to bolster the children's testimony. As such, he believes the videotaped interviews prejudiced his case.

McFadden admits he is raising this issue for the first time on appeal. As we have noted, McFadden did not object to admission of the videotapes at trial. Generally, issues not raised before the district court cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). However, there are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including the following:  (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case, (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights, and (3) the district court was right for the wrong reason. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). McFadden relies on the second exception.

However, beyond stating that consideration of the issue would serve the ends of justice, McFadden fails to explain why the issue was not raised below and why we should consider it for the first time on appeal, as required by Supreme Court Rule 6.02(a)(5) (2021 Kan. S. Ct. R. 35). See *Johnson*, 309 Kan. at 995. In *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), and *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015), our Supreme Court warned that Supreme Court Rule 6.02(a)(5) would be strictly enforced, and litigants who failed to comply with this rule risked a ruling that the

5

issue is improperly briefed, and the issue will be deemed waived or abandoned. See *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018).

Moreover, K.S.A. 60-404 generally precludes appellate courts from reviewing evidentiary challenges when the party challenging the admission of the evidence failed to lodge a timely and specific objection on the record. See *State v. Dupree*, 304 Kan. 43, 62, 371 P.3d 862 (2016). For these reasons, we clearly would be justified in dismissing McFadden's claim as unpreserved and improperly briefed.

However, in light of the severity of the charges McFadden has been convicted of and the extremely long sentences he received (totaling approximately 80 years before his earliest possible release), we choose to address McFadden's claim on the merits, and thus will determine whether the district court erred by admitting the videotaped interviews.

Admission of evidence involves several legal considerations: determining relevance, identifying and applying legal principles including rules of evidence, and weighing prejudice against probative value. See *State v. Shadden*, 290 Kan. 803, 817-18, 235 P.3d 436 (2010).

First, a court must determine whether the evidence is relevant. All relevant evidence is admissible unless it is prohibited by statute, constitutional provision, or court decision. See K.S.A. 60-407(f); *Nauheim v. City of Topeka*, 309 Kan. 145, 153, 432 P.3d 647 (2019). K.S.A. 60-401(b) defines relevant evidence as "evidence having any tendency in reason to prove any material fact." See *State v. Lowery*, 308 Kan. 1183, 1226, 427 P.3d 865 (2018).

McFadden does not dispute the relevancy of the videotaped interviews. Instead, he asserts the evidence was cumulative. Our Supreme Court has previously defined cumulative evidence as "'evidence of the same kind to the same point, and whether it is

6

cumulative is to be determined from its kind and character, rather than its effect.'" *State v. Rodriguez*, 295 Kan. 1146, 1158, 289 P.3d 85 (2012). We apply an abuse of discretion standard when determining whether evidence is cumulative. 295 Kan. at 1156.

A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). As the movant, McFadden bears the burden of showing such abuse of discretion. See *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

In Kansas, there is a general rule that "prior statements of a witness, consistent with his testimony at trial, are not admissible in corroboration of his testimony unless the witness has been impeached and then only for the purpose of rehabilitating him." *State v. Whitesell*, 270 Kan. 259, 290, 13 P.3d 887 (2000) (citing *State v. Fouts*, 169 Kan. 686, 696, 221 P.2d 841 [1950]); see *State v. Kackley*, 32 Kan. App. 2d 927, 935, 92 P.3d 1128 (2004). In *Kackley*, a panel of our court set forth the rationale for the rule:

> "'When the witness has merely testified on direct examination, without any impeachment, proof of consistent statements is unnecessary and valueless. The witness is not helped by it; for, even if it is an improbable or untrustworthy story, it is not made more probable or more trustworthy by any number of repetitions of it. Such evidence would ordinarily be both irrelevant and cumbersome to the trial and is ordinarily rejected.'" 32 Kan. App. 2d at 935 (quoting 4 Wigmore on Evidence § 1124 [Chadbourn rev. 1972]).

However, an exception to this rule exists in rape prosecutions, "where evidence of the complaint of the prosecutrix is permitted for the express purpose of corroborating her testimony through the testimony of other witnesses." 32 Kan. App. 2d at 935. In *State v. Washington*, 226 Kan. 768, 770, 602 P.2d 1377 (1979), our Supreme Court recognized this exception and explained that it exists because the failure of a rape victim to

complain, or of a delay in making the complaint, tends to discredit the victim's testimony. And in *Kackley*, our court extended the rule to child sex abuse cases and noted that in child sex crime prosecutions, admission of repetitious testimony is characteristic and generally draws no objection. 32 Kan. App. 2d at 934-35.

Here, the State admitted the videotaped interviews from the six children—T.J.H., J.M.H., A.L.H., E.S.S., J.J.H., and K.H.M. And, as we have noted, McFadden did not object to any of these videotaped interviews being shown to the jury. Additionally, the police officers also recounted what the children told them when they were interviewed, as did the forensic nurse, all without defense objections.

The presentation of evidence in this case is similar to what occurred in *State v. Harwood*, No. 114,476, 2017 WL 945767 (Kan. App. 2017) (unpublished opinion). There, a young child accused Harwood of putting his genitalia in her mouth when Harwood babysat her. The child told her parents, who eventually took her to a hospital for examination. The child also told a detective something similar when the detective interviewed her. During trial, the child testified to a consistent account of what occurred. A forensic biologist also testified about Harwood's DNA being found on the shirt the child wore the day the sexual assault occurred. At the conclusion of trial, the jury convicted Harwood of aggravated criminal sodomy.

Harwood raised multiple issues on appeal, including that the district court abused its discretion by allowing multiple witnesses to testify about what the child told them. Specifically, Harwood objected to testimony from the child's father, testimony from the nurse that swabbed the child's mouth, and a videotaped interview of the child's interview with a detective. His theory of defense was either the crime did not occur or someone else perpetrated it.

Relying on *Kackley*, the *Harwood* panel found that the testimony from the individuals was admissible because the testimony was used to corroborate the child's testimony. The court also found that the recorded interview was admissible under *Kackley* because it was used as evidence that the child made the complaint against Harwood within days of the crime. Similarly, our court concluded that the district court did not abuse its discretion by allowing the nurse to testify about what the child told her because the nurse usually obtained a history of her patients to guide her examination. Additionally, the nurse's testimony was not introduced as independent evidence of the aggravated criminal sodomy. 2017 WL 945767, at *4-5.

A comparable series of events occurred here. Just as in *Harwood*, McFadden's theory of defense was that A.L.H. and J.M.H. fabricated their stories. See 2017 WL 945767, at *4. However, in our case the children themselves testified about what occurred, and multiple others recounted what the children told them when they were being interviewed and examined. The videotaped evidence as well as the statements of police and the forensic nurse which were presented to the jury were used for the purpose of corroborating the children's testimony, not as independent evidence of the charged crimes. As such, we conclude that the district court did not abuse its discretion when it allowed the videotaped interviews of the children or the testimony from the police officers and nurses about what the children told them. By logical extension, this means that the corroborating testimony could not be considered as cumulative.

However, even if we were to conclude that admission of the additional evidence of which McFadden complains was erroneous as cumulative, we would need to determine whether the district court's error was harmless. When an error infringes upon a party's federal constitutional right, a court will declare a constitutional error harmless only where the party benefiting from the error persuades the court "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, proves there is no reasonable possibility that the error affected the

verdict." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011) (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 [1967]). The State, as the party benefiting from the error, bears the burden of proving harmlessness. See 292 Kan. at 568-69. To do so, the State argues:

> "[The] admission of the videotaped interviews was harmless at best as the strength of the remaining evidence was sufficient to sustain defendant's convictions. That is, reversal is not warranted when defendant's convictions did not rise and fall on the videotaped interviews. Rather, the evidence before the jury still included the testimony from each of the children regarding what defendant had done to each of them and their siblings, the forensic nurses who examined the children, the detectives, and the forensic scientist who analyzed the DNA evidence. And, even more telling, the jury acquitted defendant on three of the sex-crime charges."

We find the State's arguments to be persuasive. Even without the videotaped interviews, the testimony from the children and other witnesses adequately demonstrated that McFadden was guilty of the crimes for which he was convicted. Each of the children testified about the abuse they suffered from McFadden. A.L.H. and K.H.M. also testified specifically about instances where McFadden made them perform sexual acts with or on him in exchange for not hitting them with belts or extension cords.

Similarly, the forensic nurse that examined A.L.H. and J.M.H. located abrasions in the genital areas of both J.M.H. and A.L.H. She also testified about the swabs collected from J.M.H., and the forensic scientist testified to the statistically extremely high probability that the DNA found on J.M.H.'s genital area and abdomen was McFadden's. Additionally, it is significant that the jury acquitted McFadden on one count of aggravated indecent liberties with a child, one count of aggravated criminal sodomy, and one count of rape, indicating that they gave careful consideration to the evidence as it related to each individual child victim.

10

In sum, the State's evidence at trial, independent of the videotaped interviews, demonstrated McFadden's guilt beyond a reasonable doubt. If an error occurred, we believe there is no reasonable probability the error affected the verdicts. See *Ward*, 292 Kan. at 569. In short, we find no merit to McFadden's first argument on appeal.

*The jury instruction on burden of proof*

For his second point on appeal, McFadden argues that the district court erred when instructing the jury on the burden of proof. The disputed portion of the instruction states: "If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you *should* find the defendant guilty." (Emphasis added.) McFadden contends the phrasing of the instruction discouraged the jury from exercising its power of nullification.

Our Supreme Court has outlined the methodology we are to use when confronted with a complaint about a jury instruction:

"'When analyzing jury instruction issues, we follow a three-step process: "(1) determining whether the appellate court can or should review the issue, i.e., whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, i.e., whether the error can be deemed harmless." [Citation omitted.]'" *State v. Keyes*, 312 Kan. 103, 107, 472 P.3d 78 (2020).

At the first step, we must assess issue preservation. Once again, McFadden acknowledges he did not request his preferred version of the burden of proof instruction during trial but contends that we should still review the issue.

K.S.A. 2020 Supp. 22-3414(3) states, in part, that "[n]o party may assign as error the giving or failure to give an instruction, including a lesser included crime instruction,

unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous." Thus, McFadden is correct that this court can review the issue, but under K.S.A. 2020 Supp. 22-3414(3), his failure to request the instruction at trial "limits appellate review to a determination of whether the instruction was clearly erroneous." *State v. Knox*, 301 Kan. 671, 680, 347 P.3d 656 (2015).

At the second step, we must consider whether the "'instruction was legally and factually appropriate, employing an unlimited review of the entire record.'" *State v. McLinn*, 307 Kan. 307, 318, 409 P.3d 1 (2018) (quoting *State v. Williams*, 295 Kan. 506, Syl. ¶ 4, 286 P.3d 195 [2012]). At the third step, we are required to assess reversibility. Applying the clear error standard, this court "will only reverse the district court if an error occurred and we are 'firmly convinced that the jury would have reached a different verdict had the instruction error not occurred.'" *McLinn*, 307 Kan. at 318. McFadden, as the party claiming clear error, has the burden to demonstrate the necessary prejudice. See 307 Kan. at 318.

The instruction the district court gave the jury mirrored Pattern Instructions for Kansas (PIK) Crim. 4th 51.010 (2020 Supp.), which is the standard instruction regarding the burden of proof. As our Supreme Court has previously stated, "while '[t]he use of PIK instructions is not mandatory,' it is 'strongly recommended' because they 'have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions.'" *State v. Buck-Schrag*, 312 Kan. 540, 552-53, 477 P.3d 1013 (2020) (quoting *State v. Dunn*, 249 Kan. 488, 492, 820 P.2d 412 [1991]).

McFadden specifically objects to the use of the word "should" in the instruction, arguing the word discouraged the jury from exercising its power of nullification. Instead, McFadden contends the district court should have instructed the jury that it "may" find

12

the defendant guilty if it has no reasonable doubt. Stated differently, McFadden is arguing the instruction was not legally appropriate.

However, as McFadden acknowledges, our Supreme Court rejected an identical argument in *State v. Kornelson*, 311 Kan. 711, 721-22, 466 P.3d 892 (2020). There, our Supreme Court held:

> "Kornelson claims the jury should have been instructed that it 'may' convict him absent reasonable doubt. He asserts the instruction given misstated the law. But this argument lacks merit.
> "In [*State v. Patterson*, 311 Kan. 59, 68-69, 455 P.3d 792 (2020), *cert. denied* 141 S. Ct. 292 (2020)], the court held that a similar reasonable doubt instruction did not undermine the jury's nullification power, and, therefore, was legally appropriate. Telling the jury it '"should" convict absent reasonable doubt' is appropriate because it is improper to tell the jury it may nullify. Similarly, the instruction does not 'raise the "directed verdict" concerns' underlying the court's disapproval of an instruction that did foreclose nullification as a possibility by mandating that the jury ""will enter a verdict of guilty"" absent reasonable doubt.
> "We hold it was not a misstatement of the law to tell the jury: 'If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find Grady Kornelson guilty.' [Citations omitted.]" 311 Kan. at 721-22.

McFadden asserts *Kornelson* was wrongly decided but fails to elaborate as to why. We are duty-bound to follow Kansas Supreme Court precedent unless there is some indication that it is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). Neither *Patterson* nor *Kornelson* indicate any such departure is likely. As such, we find McFadden's argument to be without merit. We hold that the district court did not err when it gave the jury PIK Crim. 4th 51.010.

*The verdict forms*

For his final point on appeal, McFadden argues that the district court erred when it gave the jury its verdict forms. Specifically, McFadden contends the district court committed reversible error when it failed "to provide the jury with a verdict form listing 'not guilty' before 'guilty.'"

In previous cases, our Supreme Court has held that "'[w]hile a verdict form is not technically a jury instruction, it is part of the packet sent with the jury which includes the instructions and assists the jury in reaching its verdict. It is appropriate to apply the same standard of review applicable to review of instructions.'" *State v. Fraire*, 312 Kan. 786, 795, 481 P.3d 129 (2021) (quoting *Unruh v. Purina Mills, LLC*, 289 Kan. 1185, 1197-98, 221 P.3d 1130 [2009]). Thus, the same three-step standard of review set forth in *Keyes*, 312 Kan. at 107, is also applicable to this issue.

During the instruction conference at trial, McFadden requested that the not guilty option appear before the guilty option on the verdict forms, which the district court denied. By making such a request, he has preserved the issue for appellate review, thus complying with the first step.

Proceeding to the second step, we must determine whether the instruction was legally and factually correct, using an unlimited standard of review of the entire record. *Fraire*, 312 Kan. at 796.

Instead of listing not guilty before guilty on the verdict forms as McFadden requested, the district court used the standard version for all 11 counts on the verdict forms. McFadden acknowledges that our Supreme Court previously decided the issue adversely to his position in *State v. Wesson*, 247 Kan. 639, 652, 802 P.2d 574 (1990), *superseded on other grounds by statute as stated in State v. Rogers*, 282 Kan. 218, 225,

14

144 P.3d 625 (2006). There, when considering whether the verdict form that listed guilty before not guilty violated the defendant's presumption of innocence, our Supreme Court held:

> "A defendant is presumed innocent and the jury is so instructed. The purpose of a trial is to determine if the accused is guilty. We see no prejudice to the accused and, in any event, instruction 16 would cure any possibility of error. Instruction 16 reads, in pertinent part:
>> 'The State has the burden of proving the defendant is guilty. The defendant is not required to prove he is not guilty. You must assume the defendant is not guilty unless the evidence convinces you of the defendant's guilt.'" 247 Kan. at 652.

Here, the district court instructed the jury in the same manner regarding the burden of proof and presumption of innocence with Instruction 20. McFadden also acknowledges that our Supreme Court reaffirmed the *Wesson* holding in *State v. Wilkerson*, 278 Kan. 147, 159, 91 P.3d 1181 (2004). Nonetheless, he argues that both cases were wrongly decided. But, as the State points out, our Supreme Court recently once again considered and rejected a nearly identical argument in *Fraire*. There, our Supreme Court held:

> "Fraire argues that *Wesson* and *Wilkerson* were incorrectly decided. He contends the *Wesson* court was wrong when it stated that the purpose of a trial is to determine whether a defendant is guilty. He points to *Duncan v. State of La.*, 391 U.S. 145, 155, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968), where the court stated that criminal defendants have the constitutional right to a jury trial 'in order to prevent oppression by the Government.'
>
> "While the purpose of a jury trial in different contexts may be debated, Fraire makes no showing at all that the order in which the verdict form presents the options has any bearing on the likelihood of a jury reaching one verdict or the other. Realistically, jurors are probably not closely examining the verdict form before they begin their deliberations, and it is unrealistic to suggest they change their collective conclusion when the foreperson starts to fill out the form. In the absence of any showing of real prejudice,

15

Fraire gives this court no reason to depart from *Wesson* and *Wilkerson*." *Fraire*, 312 Kan. at 796.

As we have noted, we are duty-bound to follow Kansas Supreme Court precedent unless there is some indication that the Kansas Supreme Court is departing from its previous position. *Rodriguez*, 305 Kan. at 1144. Our Supreme Court's decision in *Fraire* does not indicate a departure from its previous position. Instead it indicates an adherence to the rule previously pronounced in *Wesson* and reaffirmed in *Wilkerson*. Consequently, McFadden's position on the issue must be rejected for the same reasons our Supreme Court rejected the same contention in *Fraire*. We find that the district court did not err when it gave the jury verdict forms that listed guilty before not guilty.

Affirmed.

* * *

WARNER, J., concurring: I agree with the majority opinion's analysis of the second and third claims in Eric McFadden's appeal and concur in the judgment. I write separately because I do not believe the first claim of error—the admission of the children's recorded interviews from the Wichita Children's Advocacy Center—is properly before us.

Appellate courts are courts of review. This means we ordinarily only consider claims that were preserved in earlier proceedings—i.e., claims that were first presented to the district court. This preservation requirement serves several practical purposes. Most notably, it allows the district court the opportunity to consider and rule on the parties' claims, thereby reducing the chance of reversible error and the need for a new trial. And it allows the parties the opportunity to create a comprehensive trial record, ensuring a more meaningful review on appeal.

16

Though appellate courts often discuss "preservation" of issues as an overarching principle, it derives from different sources. Sometimes, the need for preservation is inherent to the appeal process itself and is defined through caselaw. See, e.g., *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018) (discussing general rule that constitutional claims cannot be raised for the first time on appeal). Because this type of preservation is developed by the courts, courts may also decide when it may give way to other priorities. Thus, Kansas courts have crafted limited exceptions—largely motivated by procedural fairness and judicial economy—to allow consideration of some questions raised for the first time on appeal when that review is otherwise warranted. See *State v. Johnson*, 309 Kan. 992, 995, 331 P.3d 1036 (2019); slip op. at 5 (listing the three judicially created exceptions to the preservation requirement discussed in *Johnson*).

In other instances—such as when a person is challenging the admission of evidence—the scope and manner of the preservation requirement is defined by statute. Under K.S.A. 60-404, "A verdict or finding shall not be set aside . . . by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection." Over a decade ago, the Kansas Supreme Court held that under "the plain language of K.S.A. 60-404, evidentiary claims . . . must be preserved by way of a contemporaneous objection for those claims to be reviewed on appeal." *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009).

Since *King*, the Supreme Court has clarified that because K.S.A. 60-404's preservation requirement is statutory, courts cannot modify its directive through judicially created exceptions. See *State v. Brown*, 307 Kan. 641, 645, 413 P.3d 783 (2018). As the court succinctly explained in *State v. Carter*, 312 Kan. 526, 535, 477 P.3d 1004 (2020): "Exceptions exist for raising issues on appellate review without expressing an objection to the trial court, but K.S.A. 60-404 does not allow those exceptions to come into play in the context of the admissibility of evidence."

Here, the majority concludes that even though McFadden did not object to the admission of the children's recorded interviews at trial, our consideration of that issue is warranted "in light of the severity of the charges McFadden has been convicted of and the extremely long sentences he received." Slip op. at 6; see *Johnson*, 309 Kan. at 995. I appreciate the majority's qualitative assessment. I agree that, if this claim had been properly preserved, it would not require reversal for the reasons the majority discusses. But this court is duty-bound to follow Kansas Supreme Court precedent. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). And the Kansas Supreme Court has held that the judicially created exceptions listed in *Johnson* do not apply in the evidentiary context.

McFadden did not object to the admission of the children's recorded interviews at trial. Based on the Kansas Supreme Court's decisions in *King* and its progeny, I would find that the evidentiary challenge McFadden now raises for the first time on appeal "is not properly before the court." *Carter*, 312 Kan. at 535.