Argued and submitted October 30, 1987, reversed and remanded for new trial
October 12, 1988

STATE OF OREGON,
*Respondent,*

*v.*

ANTHONY P. GREER,
*Appellant.*

(C85-09-33811; CA A41517)

763 P2d 158

Marsha Mussehl, Salem, argued the cause for appellant. On the brief was Gary D. Babcock, Public Defender, Salem.

Brenda Peterson, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Terry Ann Leggert, Assistant Attorney General.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Defendant appeals his conviction for possession of a controlled substance. ORS 475.992. He assigns as error that the court denied his motion to suppress evidence found in his vehicle after a stop. He asserts that the police stopped him without reasonable suspicion that he had committed a crime. ORS 131.615. We reverse.

About 3:00 a.m., the police radio dispatcher told Officer Van Dyke that a citizen had reported that a "suspicious vehicle" with two "suspicious people" as occupants was parked at the drive-up window of a Dairy Queen restaurant on S.E. 136th Avenue and Division. The citizen's report described the vehicle and its license number. The dispatcher gave Van Dyke the license number and a description of the car, the name and address of the registered owner and information that he did not live in the vicinity of the restaurant.

Van Dyke drove his police car to the restaurant. He discovered the described car parked in the driveway outside the drive-up window. The restaurant and its driveway area were unlit. The driveway was open to the public, but the business was closed, and there were no employes present. Van Dyke approached from 136th Avenue. He testified that the car could not be seen from that street but that, from Division, "it would be like an alley-way if you were driving down Division and took a quick look * * * you could see the car back there."

Van Dyke testified:

"When I pulled in, I put my spotlight on the rear window [of defendant's] car and turned my emergency lights on. About the same time, [Officer] Beemer [in another police car] pulled in off of Division facing him. There were two persons in the car: [defendant] behind the driver's—in the driver's seat behind the wheel and there was a female on the right side. And there was a lot of movement in the car and to me it looked like they were trying to hide something."

As he drove in, he observed that the drive-in window appeared to be intact. He also testified that Beemer appeared in front of defendant's car "relatively simultaneously" and that, in effect, the police cars "boxed in" defendant's car. Van Dyke saw the movement in the car as "I'm just pulling up. As I'm

pulling up with my spot light on, I could see them moving about, bending down."

Van Dyke testified that he knew from his experience as an officer that in other burglaries of fast food restaurants, burglars had gained entry through the drive-up window. He got out of the car with his flash light, approached defendant's vehicle, looked in it and saw a plastic bag between defendant's legs on the driver's seat. He believed that the plastic bag contained illegal drugs and placed defendant in his patrol car.

The trial court ruled, and the state concedes, that the stop occurred when the two police cars effectively prevented defendant's car from leaving.[1] The issue, therefore, is whether, on the basis of what the officers knew at the time of the stop, they had a "reasonable suspicion" that defendants had committed or were engaged in committing a crime. We hold that they did not.

Van Dyke's observation, after he turned on his spotlight and emergency lights, that defendant and his companion were trying to hide something, was made after the two officers had effectively sealed off defendant's vehicle and, therefore, after the stop. It cannot be a basis for the stop. Similarly, the citizen informant's report that "two suspicious" people in a "suspicious" vehicle were at that location did not supply a factual basis for the stop; it merely alerted the police to the situation. Moreover, the officers saw nothing, such as a broken window or an individual outside defendant's vehicle, to support their suspicion that defendant or his companion were burglarizing or had burglarized the restaurant. The only facts which are relevant to determine whether the stop was justified are that defendant's vehicle was parked in the unlit driveway at 3:00 a.m. next to the drive-up window, that the registered owner of the vehicle did not live in the vicinity of the restaurant, that there were two people in the front seat and that Van

---

[1] The court stated:

"Being at 3:00 a.m., approaching a parked car, I believe that it was a matter of officer and citizen safety to put on the overhead lights to make an identification of the car as being a police car. That was the signal of those lights, rather than signaling that the individual was not free to leave.

"But what makes this a stop is another police car pulled in from the front, effectively sealing off the car in which the Defendant was sealed [sic] from leaving. That constitutes a stop."

Dyke knew from experience that drive-up windows have been a point of entry for burglaries of other fast food restaurants. The state argues that those circumstances are sufficient to create a reasonable suspicion.

In *State v. Butkovich,* 87 Or App 587, 743 P2d 752 (1987), we held that an officer did not have reasonable suspicion to justify a stop on the basis of seeing two people in a vehicle parked in the driveup lane of a closed fast food restaurant at 2:00 a.m. and an occupant's surprised and "furtive" reaction to the officer when he approached the vehicle to make further inquiries. We stated that the "intuition of an officer" without articulable facts, other than the facts just recited, indicating some likelihood of criminal activity "does not rise to a reasonable suspicion." 87 Or App at 590. We quoted from *State v. Messer,* 71 Or App 506, 509, 692 P2d 713 (1984):

> "We are not prepared to say that all persons who sit in vehicles in parking lots at odd hours of the night or morning thereby render themselves suspect and subject to being stopped by a passing police officer." (Footnote omitted.)

*See also State v. Goaid,* 68 Or App 904, 683 P2d 129 (1984).[2]

Reversed and remanded for a new trial.[3]

---

[2] In contrast, we sustained the stop in *State v. Wolfe,* 93 Or App 401, 763 P2d 154 (1988), where the officer who made the stop had been told that the defendant and his companion had left their vehicle, gone up to residences bearing for sale signs and returned to their vehicle, disappeared briefly behind one residence and again returned to their vehicle and were cruising the neighborhood. He knew that burglars had followed that same pattern in carrying out previous burglaries in that particular neighborhood. Here, although officer Van Dyke knew from experience that drive-up windows had been a point of entry for burglaries of other fast food restaurants, defendant was sitting in a car parked in an unlit driveway of a fast food restaurant at 3:00 a.m. next to the drive-up window. Suffucient affirmative conduct on the part of defendant which was present in *State v. Wolfe, supra,* is lacking here. *See also State v. Anderson,* 46 Or App 501, 612 P2d 309 (1980), where the police observed the defendant drive into the parking lot of a closed business establishment at 1:00 a.m. and walk up to the door; *State ex rel Juv. Dept. v. Lesh,* 49 Or App 373, 619 P2d 935 (1980), where the police observed school-aged boys pushing a wheelbarrow containing stereo components through a residential neighborhood during school hours; and *State v. Stiles,* 68 Or App 297, 680 P2d 1016, *rev den* 297 Or 459 (1984), where the police saw the defendant and a companion at 2:00 a.m. leaving the backyard of a residence through a hedge and over a downed fence, carrying a shaving kit, felt bag and a suitcase.

[3] Because of our disposition, we do not address defendant's argument that the officers' inquiry went beyond permissible limits. *See* ORS 131.615(3).