Argued and submitted November 10, 2014, affirmed April 29, petition for review denied October 8, 2015 (358 Or 69)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JACOB WILLIAM CLINK,
*Defendant-Appellant.*

Washington County Circuit Court
C121802CR; A153305

348 P3d 1187

Lindsey J. Burrows, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Sarah M. Villanueva, Assistant Attorney General.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

HADLOCK, J.

## HADLOCK, J.

Defendant appeals a judgment of conviction for unlawful possession of methamphetamine in violation of ORS 475.894. He assigns error to the trial court's denial of his motion to suppress evidence that a police officer discovered after defendant consented to a search of the parked vehicle in which he had been sitting. Specifically, defendant argues that, before he consented to the search, the officer had unlawfully seized him without reasonable suspicion in violation of Article I, section 9, of the Oregon Constitution. We conclude that the officer's stop of defendant was justified by reasonable suspicion that defendant had been engaged in criminal activity. Accordingly, we affirm.

We review the denial of a motion to suppress for legal error and we are bound by the trial court's findings of historical facts as long as the record includes constitutionally sufficient evidence to support those findings. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993).

We describe the facts in keeping with the trial court's findings, which are undisputed. At 10:45 p.m., City of Forest Grove Police Officer Wolf was dispatched to a "drug vice call." Dispatch informed Wolf that a caller had complained that "a couple of guys were in front of [a particular address] smoking something in a newer silver Volvo" that was parked in front of a maroon truck. The informant gave dispatch his first name and telephone number.

Wolf knew that the address identified by the caller was in a residential neighborhood that was in the process of being developed and that it was not a high crime area. Wolf took the call seriously because calls from that area were usually accurate. He testified that he thought the call possibly related to "kids smoking cigarettes or smoking marijuana in the car."

When Wolf arrived, he saw the silver Volvo parked in front of the maroon truck, as the informant had described. Wolf stopped his patrol car near the truck, approximately 20 to 25 feet away from the Volvo. He then pointed his spotlight on the car; he did not activate his lights or sirens. Wolf saw two adults inside the Volvo, a male in the driver's

seat—defendant—and a female in the passenger seat. Wolf then saw defendant "rotate his upper body towards the passenger side of the vehicle and reach into the glove box or the center console" with "very elaborate," "very deliberate," and "furtive" movements, as though he was "concealing a large hard object versus a small pliable object * * *." Concerned that defendant was concealing or reaching for a weapon, Wolf called for backup. Wolf's concern about weapons was heightened by the nature of the report that the people in the car had been "smoking something" because, he testified, "people who use drugs are often associated with firearms and stolen vehicles." During this time, Wolf also provided the Volvo's license plate to dispatch to check the plates, but he did not receive responsive information until after his contact with defendant.[1]

Wolf approached the car after backup arrived. When he looked into the car, Wolf recognized the female passenger from previous law enforcement interactions and knew that she was a methamphetamine user. At that point, Wolf believed that illegal narcotics were in the vehicle. Wolf asked defendant what he had put in the center console and defendant "acted as though he didn't know what [Wolf] was talking about." Defendant was "very short" and "acted irritated" that Wolf was there. Wolf asked defendant for his driver's license, defendant gave it to him, and Wolf retained it. Concerned for his safety, Wolf then told defendant to step out of the car. As soon as defendant left the car, Wolf saw a used methamphetamine pipe sticking out of a pocket on the passenger's sweatpants. Wolf ordered the passenger to step out of the car and ensured that she understood her *Miranda* rights while the backup officer, Jacobsen, stayed with defendant. The passenger told Wolf that the pipe belonged to defendant.

While Wolf spoke with the passenger, Jacobsen had a "low key" and "friendly" conversation with defendant and asked him for consent to search the car. Defendant consented to the search and Jacobsen found a bag of methamphetamine inside the center console. Wolf read defendant

---

[1] At some point, the vehicle plates came back "UTL," or "unable to locate." The trial court found that there was not "anything in the record" indicating that the officer had "any reasonable suspicion of stolen vehicle * * * before the stop occurred."

his *Miranda* rights. Defendant acknowledged that he understood those rights and then told Wolf that he had hidden the methamphetamine in the center console and that the passenger had hidden his pipe in her pocket.

After being charged with unlawful possession of methamphetamine, defendant filed a motion to suppress evidence obtained as a result of the search and seizure, arguing that Wolf had seized him without reasonable suspicion that he had committed a crime. At trial, the state conceded that defendant was stopped when the officer ordered him out of the car, but argued that the seizure was justified by reasonable suspicion that defendant carried a concealed weapon or possessed illegal drugs.

The trial court denied defendant's motion, concluding that, based on the totality of the circumstances, Wolf had reasonable suspicion of criminal activity that justified the stop. Defendant then waived his right to a jury trial and, following a stipulated facts trial, the court found defendant guilty of unlawful possession of methamphetamine.

On appeal, defendant renews his argument that the officer stopped him without reasonable suspicion and, therefore, the trial court should have suppressed any evidence discovered during the consent search of defendant's vehicle, as well as defendant's subsequent statements. The state makes two arguments in response. First, it contends that Wolf had reasonable suspicion that justified his stop of defendant.[2] Second, the state contends that, even if the stop was unlawful, suppression was not required because defendant's consent to the search "was sufficient to attenuate the taint" of the stop. We address only the first of the state's arguments, as it is dispositive. For the reasons set out below, we conclude that Wolf's stop of defendant was justified by reasonable suspicion and, therefore, that the trial court correctly denied defendant's motion to suppress.

Article I, section 9, protects "the right of the people to be secure in their persons *** against unreasonable

---

[2] On appeal, the state acknowledges that it conceded at trial that defendant was seized and notes that, given that concession, it will not argue on appeal that defendant was not seized.

search, or seizure." One type of seizure is a "stop," that is, a temporary restraint on a person's liberty, often for investigatory purposes, that does not rise to the level of an arrest. *State v. Ashbaugh*, 349 Or 297, 308-09, 244 P3d 360 (2010); *State v. Rodgers/Kirkeby*, 347 Or 610, 621, 227 P3d 695 (2010).[3] A stop "violates Article I, section 9, unless justified by, for example, necessities of a safety emergency or by reasonable suspicion that the person has been involved in criminal activity." *Ashbaugh*, 349 Or at 309.

A police officer has "reasonable suspicion" that a person has or is about to commit a crime if the officer holds a subjective belief that is objectively reasonable under the totality of the circumstances. *State v. Hunt*, 265 Or App 231, 235, 335 P3d 288 (2014). The objective prong of that test is met if the officer "is able to point to specific and articulable facts that give rise to a reasonable inference that a person has committed a crime * * *." *Ehly*, 317 Or at 80. An "officer's training and experience are relevant considerations that bear on the reasonable factual inferences that an officer may draw." *State v. Meza-Garcia*, 256 Or App 798, 803, 303 P3d 975 (2013). In addition, a reliable report from an informant can furnish the "specific and articulable facts to support an inference that criminal activity is afoot." *State v. Goss*, 219 Or App 645, 650, 184 P3d 1155, *rev den*, 345 Or 94 (2008) (internal quotation marks omitted).

Here, the trial court determined that the following circumstances gave rise to Wolf having objectively reasonable suspicion: (1) a named informant reported that a "couple of guys" were "smoking something" in a vehicle; (2) the location of the call was not a high-crime area, the call was "not a typical call for this type of place," and calls from that area are "usually accurate"; (3) defendant made furtive movements, and it looked like defendant was attempting to conceal "something hard," which Wolf believed could have been a weapon; and (4) Wolf knew that defendant's passenger was a methamphetamine user. We agree with the trial

---

[3] "Arrests," for purposes of the Article I, section 9, analysis, are "restraints on an individual's liberty that are steps toward charging individuals with a crime and which, under Article I, section 9, must be justified by probable cause to believe that the arrested individual has, in fact, committed a crime." *Ashbaugh*, 349 Or at 309.

court that, considered collectively, those facts gave rise to reasonable suspicion that defendant was engaged in criminal activity.

As an initial matter, defendant concedes that the informant's call was "reliable." Nonetheless, he contends that the call "did not convey evidence of criminal activity" because the caller did not say *what* the car's occupants were smoking and, therefore, Wolf's belief that defendant was engaged in illegal conduct was unreasonable. Defendant relies on *State v. Greer*, 93 Or App 409, 412, 763 P2d 158 (1988), in which we held that a "citizen informant's report that 'two suspicious' people in a 'suspicious' vehicle were at [a] location did not supply a factual basis for the stop; it merely alerted the police to the situation." In our view, this case is not analogous to *Greer*. Here, the informant did not merely describe the people in the car as "suspicious" for unspecified reasons. Rather, the informant stated that two people in a car were "smoking something." Given that the informant reported that information to the police, a reasonable inference can be drawn that the informant believed that the smoking involved criminal activity—either because the people were smoking illegal drugs or because they were not old enough to smoke even tobacco lawfully. Accordingly, it was reasonable for Wolf to take the informant's report into consideration in developing suspicion that he would find people who were engaged in illegal conduct. *See generally State v. Wiseman*, 245 Or App 136, 142, 261 P3d 76 (2011) (homeowner's report of specific suspicious circumstances outside her home "was reliable and could be considered together with the other circumstances" in determining whether a responding officer had reasonable suspicion that the defendant was engaged in criminal activity).

Moreover, Wolf did not base his suspicion of defendant solely on the informant's report. Rather, as he explained during the suppression hearing, he also relied on his knowledge that defendant's passenger was a methamphetamine user. We view that fact as pertinent here, despite our general admonition that a defendant's association with a known drug user is not enough, standing alone, to establish reasonable suspicion that the defendant is engaged in illegal drug activity. *See, e.g., State v. Nichols*, 269 Or App 429,

433, 345 P3d 468 (2015) ("Although [the] defendant is correct that merely being in the company of visibly intoxicated people while leaving a pub would be insufficient by itself to establish reasonable suspicion in this case, that fact is nonetheless part of the totality of the circumstances that [the police officer] confronted and that we must thus consider."); *cf. State v. Zumbrum*, 221 Or App 362, 369, 189 P3d 1235 (2008) ("The mere fact that a person associates with another person involved with methamphetamine does not support a reasonable suspicion that that person is also involved with methamphetamine."). In this case, defendant was not merely "associating" with his passenger. Rather, Wolf had been told that defendant was actively engaged in a smoking activity with that person. Given Wolf's recognition of defendant's passenger as a methamphetamine user, and his knowledge that people can use methamphetamine by smoking it, Wolf could reasonably suspect that the informant had seen defendant smoking methamphetamine, and not something more innocuous. *See State v. Holdorf*, 355 Or 812, 829-30, 333 P3d 982 (2014) (an officer's observation that the defendant was "tweaking," when coupled with the knowledge that the defendant's companion was a "known felon with an outstanding warrant who was under investigation as a suspect in a local methamphetamine distribution ring" gave rise to a reasonable suspicion that the defendant possessed methamphetamine).

Defendant's movements, after he spotted Wolf, contribute to our conclusion that, under the totality of the circumstances, Wolf reasonably suspected that defendant had been engaged in criminal activity. Although "furtive gestures" alone may not give rise to reasonable suspicion, they can contribute to the reasonableness of an officer's belief that a person has committed a crime or presents a safety threat. *See State v. Rudnitskyy*, 266 Or App 560, 565, 338 P3d 742 (2014), *rev den*, 357 Or 112 (2015) (a police officer had reasonable suspicion justifying his stop of the defendant because of the "defendant's furtive gesture with [a] straw," combined with other factors including the officer's "knowledge that plastic straws are commonly used to smoke heroin"). Here, Wolf explained that defendant's "elaborate," "deliberate," and "furtive" movements suggested that "he

was concealing a large hard object." What Wolf perceived as an attempt to conceal or retrieve a weapon could contribute either to a reasonable suspicion that defendant presented a safety threat or—given Wolf's belief that "people who use drugs are often associated with firearms"—to a heightened suspicion that defendant was engaged in illegal drug activity. *See State v. Mitchele*, 240 Or App 86, 94, 251 P3d 760 (2010) (defendant's furtive attempt to hide from approaching police officers "add[ed] support to the conclusion that the officers' suspicion that defendant was engaging in or about to engage in criminal activity"). Finally, Wolf's testimony that citizen reports of criminal activity "that come from this particular neighborhood * * * have more merit than [those from] other areas of [the] city" may not be weighty evidence, but it contributes at least slightly to the totality of the circumstances that demonstrate the reasonableness of his suspicion that defendant had been committing a crime. *See generally State v. Killion*, 229 Or App 347, 356, 211 P3d 367, *rev den*, 347 Or 349 (2009) (ultimately, "whether the [informant's] report is reliable rests on the particular circumstances in each case, because informant tips vary greatly in their value and reliability" (internal quotation marks omitted)).

We conclude that, considered in the totality of the circumstances, the facts described gave rise to objectively reasonable suspicion that defendant had committed or was committing a crime. *State v. Hiner*, 240 Or App 175, 181, 246 P3d 35 (2010) ("Reasonable suspicion, as a basis for an investigatory stop, does not require that the facts as observed by the officer conclusively indicate illegal activity but, rather, only that those facts support the *reasonable inference* of illegal activity by that person." (Emphasis added.)). Accordingly, the trial court did not err when it denied defendant's motion to suppress.

Affirmed.