Submitted April 21, 2015, affirmed April 13, petition for review denied
October 6, 2016 (360 Or 423)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## DONALD KIRK WALKER,
*Defendant-Appellant.*

Yamhill County Circuit Court
12CR00909; A155126

372 P3d 540

Peter Gartlan, Chief Defender, and Matthew Blythe, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Pamela J. Walsh, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.

HADLOCK, C. J.

## HADLOCK, C. J.

Defendant appeals a judgment of conviction for possession of methamphetamine in violation of ORS 475.894. He raises a single assignment of error on appeal, arguing that the trial court erred when it denied his motion to suppress methamphetamine that a police officer found after he detained defendant to investigate suspected illegal drug activity. Defendant contends that the officer lacked reasonable suspicion of criminal activity and, therefore, acted unlawfully when he stopped defendant. We conclude that the officer had reasonable suspicion. Accordingly, we affirm.

We review the denial of a motion to suppress for legal error, and we are bound by the trial court's implicit and explicit findings of historical fact as long as the record includes constitutionally sufficient evidence to support those findings. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We state the facts below in keeping with that standard.

Shortly before 12 p.m., "dispatch" told Newberg Police Officer McCowan that a person had called to report a suspected drug deal in a parking lot near George Fox University. The informant gave dispatch his name and telephone number and explained why he believed that a drug deal was in process. The informant said that he had seen a white van driven by a woman pull into the parking lot and a man on a bicycle ride up and get into the van. Once inside the van, the man reportedly reached into his pants, pulled something out that he and the woman looked at while it was in the man's lap, and then the man and woman "were smoking something" in the van. The informant described the van and said that the man who had been on the bicycle was wearing a red sweatshirt and a black hat. Dispatch gave that information to McCowan, who drove to the parking lot in response.

McCowan arrived at the parking lot within a minute or two after receiving the report from dispatch. When he arrived, defendant was still in the van, but he then got out and began walking toward his bicycle; at the same time, the woman in the van drove away. McCowan observed that defendant was wearing a red sweatshirt and a black hat, as the informant had reported. McCowan parked his patrol

car near defendant and questioned him about what had happened inside the van. Defendant refused McCowan's request to search his person. Ultimately, McCowan learned that defendant was on probation and spoke with a municipal court judge, who ordered McCowan to search defendant. Defendant still refused to consent to the search; he then was arrested by another officer who had arrived at the parking lot. At that point, defendant acknowledged that he had methamphetamine in his pocket.

Defendant was charged with possession of methamphetamine. At the suppression hearing, the state conceded that McCowan had detained defendant at some point prior to the arrest, but it argued that the stop was justified because McCowan reasonably suspected that defendant had been engaged in illegal drug activity.[1] In support of that theory, the state offered evidence of the information that McCowan had received from dispatch, as well as McCowan's own observations of the situation in the parking lot. In addition, McCowan described his training, which included information about "[d]ifferent habits of drug users and people that possess drugs, places they frequent, things like that." McCowan also testified that, although he had been a police officer for less than two years, he had investigated drug crimes, he was familiar with "the ways and manners in which methamphetamine is used," and he had encountered "the method of transferring methamphetamine or delivering methamphetamine from one person to another." McCowan testified that the information he received from dispatch, relaying the informant's observations, was consistent with his experience in "a way a drug deal happens." He also testified that, when he encountered defendant in the parking lot, he suspected that defendant had been engaged in illegal drug activity.

The trial court denied defendant's suppression motion, concluding that McCowan had reasonable suspicion that justified the stop. Defendant then waived his right to a jury trial, and the court found him guilty of methamphetamine possession after a stipulated-facts trial.

---

[1] The state adheres to that approach on appeal. It argues only that any stop was justified by reasonable suspicion; it does not dispute that a stop occurred.

On appeal, defendant argues that the trial court erred by denying his suppression motion because the state did not establish that McCowan had reasonable suspicion that defendant was engaged in criminal activity. Defendant acknowledges that McCowan properly could rely on the informant's report because the informant had identified himself, the informant's report was based on his personal observations of what happened in the parking lot, and McCowan's own observations corroborated the informant's report. *See State v. Villegas-Varela,* 132 Or App 112, 115, 887 P2d 809 (1994) (describing factors that inform the assessment of an informant's reliability). Nonetheless, defendant argues, McCowan "could not reasonably rely on the informant's conclusory statement that he was witnessing a drug deal in forming reasonable suspicion." The informant's conclusion is not helpful to the reasonable-suspicion calculus, defendant asserts, because the record does not include evidence that the appearance of a drug deal is a matter of common knowledge. Defendant argues that—absent the informant's assertion that he was witnessing a drug deal—the remaining information available to McCowan did not give him reasonable suspicion sufficient to justify his stop of defendant. Defendant concludes that the trial court should have granted his suppression motion because McCowan obtained the methamphetamine at issue as a direct result of the unlawful stop.

In response, the state asserts that "an assessment of all of the circumstances—the informant's report, the officer's own observations, and the officer's training and experience"—establishes that McCowan had reasonable suspicion of criminal activity. We agree with the state.

We begin by reviewing basic principles regarding when police officers may conduct investigatory stops.

"Analytically, police-citizen encounters typically fall into one of three categories that correlate the degree of intrusiveness on a citizen's liberty with the degree of justification required for the intrusion. At one end of the continuum are mere encounters for which no justification is required. At the other end are arrests, which involve protracted custodial restraint and require probable cause. In between are temporary detentions for investigatory purposes, often

termed 'stops,' which generally require reasonable suspicion. Both stops and arrests are seizures for constitutional purposes, while less restrictive encounters are not."

*State v. Fair*, 353 Or 588, 593-94, 302 P3d 417 (2013) (citations and footnote omitted).

The result in this case turns on a proper understanding of the "reasonable suspicion" standard, that is, what it means for an officer to reasonably suspect that an individual has committed, or is about to commit, a crime. That standard is "less than the standard of probable cause to arrest." *State v. Holdorf*, 355 Or 812, 823, 333 P3d 982 (2014). Thus, an officer may have "reasonable suspicion" sufficient to justify an investigatory stop of a person even if the officer does not have sufficient reason to believe that it is *probable* that the person has committed, or is about to commit, a crime. All that is necessary is that the officer reasonably *suspect* the person of past, current, or imminent criminal activity.

That an officer may briefly detain a person to investigate reasonably suspected criminal activity does not mean, of course, that an officer may interfere with the person's liberty based only on intuition or a hunch. *Id.*; *see State v. Guggenmos*, 350 Or 243, 260, 253 P3d 1042 (2011) (differentiating an officer's hunch from reasonable suspicion). To prevent officers from interfering with individuals' liberty based on nothing more than the officers' instincts or gut reactions to situations, courts require officers to be able to articulate the "observable facts" that form the basis for their suspicion of criminal activity. *Holdorf*, 355 Or at 823; *State v. Valdez*, 277 Or 621, 629, 561 P2d 1006 (1977). The Supreme Court most recently has explained the resulting test for reasonable suspicion as follows:

"[I]f an officer is able to point to specific and articulable facts that a person has committed a crime or is about to commit a crime, the officer has a 'reasonable suspicion' and may stop the person to investigate."

*Holdorf*, 355 Or at 823.

In *Holdorf*, the court emphasized that an officer may not detain a person based *solely* on the officer's intuition

or experience. *Id.* at 829. Nor may an officer rely solely on observing that a person has engaged in a "not too remarkable action." *Valdez,* 277 Or at 628. However, the reasonable suspicion standard does incorporate "a proper regard for the experience that police officers bring with them when they encounter criminal suspects." *Holdorf,* 355 Or at 827-28. Accordingly, whether an officer's subjective suspicion of criminal activity is objectively reasonable "'often will depend on the inferences drawn from the particular circumstances confronting the officer, viewed in the light of the officer's experience.'" *Id.* at 828 (quoting *Ehly,* 317 Or at 80). Thus, reasonable suspicion exists when the officer can point to "distinctive behavior" associated with unlawful activity that permits the officer "to make a reasonable inference based on the officer's pertinent training and experience" that criminal activity may be afoot. *Id.* at 829. Again, the distinction between an officer's improper reliance solely on intuition and the officer's permissible reliance on reasonable suspicion of criminal activity reduces largely to the officer's ability to identify and describe the observable facts that lead the officer—in light of the officer's training and experience—to suspect that a person has committed, is committing, or is about to commit a crime.

In cases like this one, where the facts known to the officer include information received from an informant who meets the standard for reliability under *Villegas-Varela,* another question sometimes arises: May the informant's *conclusion* that unlawful activity is taking place contribute to the reasonable-suspicion analysis? In at least some circumstances, the answer is "yes." For example, in *State v. Mitchele,* 240 Or App 86, 88, 251 P3d 760 (2010), a named informant reported that a person, whom the informant described, was "possibly casing, walking up and down [the] street, [and] looking at homes." (Brackets in original.) Police officers stopped the defendant based largely on that report and eventually discovered that he possessed methamphetamine; he was convicted of that crime following the denial of his motion to suppress. *Id.* at 88-90. On appeal, the defendant argued that, even if the informant's report was reliable, "the information that it conveyed was merely a conclusory observation that [he] was 'casing' houses, which does not support

an objectively reasonable suspicion that [he] was committing or about to commit a crime." *Id.* at 93. We disagreed, holding that the informant's reliable report—including its conclusion—could "properly be included in the totality of the circumstances that we can consider to determine if the officers' suspicion that defendant was committing or was about to commit a crime was objectively reasonable." *Id.* at 94; *see also State v. Perrin*, 143 Or App 123, 128, 923 P2d 1249 (1996), *rev den*, 325 Or 368 (1997) (that reliable informant "reported an 'intoxicated driver' rather than describing the details that led him to that opinion does not, in and of itself, negate reasonable suspicion").

True, in holding that the reasonable-suspicion analysis can take into account an informant's *conclusion* that a person is engaged in unlawful activity, courts sometimes have observed that the informant's belief was based on matters of common knowledge. For example, in *State v. Lichty*, 313 Or 579, 584, 835 P2d 904 (1992), a store clerk told a police officer that a "bag of coke" had fallen out of a wallet that she found in the store. In holding that the officer had reasonable suspicion to stop the defendant based on the clerk's statement, the Supreme Court rejected the defendant's argument that the officer could not reasonably rely on the clerk's statement because the clerk was not an expert in drug identification. *Id.* at 585. The court noted that the record included evidence that "members of society have a general knowledge regarding the appearance of cocaine" and the clerk testified that her belief that the substance was cocaine was based on watching the news and television programs. *Id.* Somewhat similarly, in *State v. Bybee*, 131 Or App 492, 497, 884 P2d 906 (1994), we held that a convenience store clerk's reliable report that the defendant was driving while intoxicated was enough—by itself—to justify a stop of the defendant even though the report of intoxication was conclusory "because members of the general public have a common knowledge about whether a person is under the influence of alcohol."

In neither *Lichty* nor *Bybee*, however, did the courts conclude that—absent evidence that the subject of the informant's report was a matter of common knowledge—the police officers involved could not have relied on those reports as a

contributing factor in the reasonable-suspicion analysis. In some circumstances, an informant's unexplained conclusion that criminal activity is afoot will not, standing alone, give rise to objectively reasonable suspicion that a person has committed a crime. *See, e.g., State v. Greer,* 93 Or App 409, 412, 763 P2d 158 (1988) (an informant's "report that 'two suspicious' people [were] in a 'suspicious vehicle' * * * did not supply a factual basis for [a] stop"). In the end, though, what matters is whether the totality of the facts known to an officer, including information and conclusions received from an informant, evaluated in light of the officer's training and experience, give the officer objectively reasonable suspicion that a person is, has been, or is about to be engaged in criminal activity. *See State v. Wiseman,* 245 Or App 136, 142, 261 P3d 76 (2011) (a named informant's report of "suspicious" activity was properly "considered as a part of the totality of the circumstances in determining whether there was reasonable suspicion").

In this case, the facts known to McCowan, evaluated in light of his training and experience, gave him reasonable suspicion that defendant was engaged in unlawful conduct. McCowan had received a report from an identified informant that a bicyclist and a person driving a van met in a parking lot, the bicyclist entered the van, he then pulled something from his pocket, and he and the van's driver then smoked something. The informant not only described those facts, but he explained the conclusion that he had drawn from his observations—that the two people were involved in a drug deal. In other words, the informant suggested that the "something" that the people were smoking was an illicit drug and that the people had met in the parking lot for that purpose. *See State v. Clink,* 270 Or App 646, 651, 348 P3d 1187, *rev den,* 358 Or 69 (2015) (an informant's report that two people in a car were "smoking something" suggested that the informant believed the people were engaged in illegal activity, given that he had reported that fact to the police).

In light of his training and experience regarding how drug deals happen, McCowan could reasonably rely on both the informant's description of the events he had observed and the unsurprising conclusion that the informant

reached from those observations in developing a suspicion that defendant was engaged in criminal activity. McCowan's suspicion reasonably could be heightened when he personally observed that both parties promptly left the parking lot after interacting only briefly. That is, McCowan's personal observations, his knowledge of the informant's report to dispatch, and his personal training and experience combined to allow him to describe the "observable" and "articulable" facts that led him to suspect that defendant and the van's driver had engaged in illegal drug activity. Thus, McCowan did not detain defendant based on a hunch or intuition; nor did he stop defendant based solely on actions that were "not too remarkable." *Valdez*, 277 Or at 628. Rather, the detention was based on a series of events that, considered in combination, an officer with training and experience regarding drug transactions could identify as distinctively associated with criminal activity: the quick meet-up of two people in a parking lot, their brief examination of something that one of them pulled from his clothing, their subsequent "smoking something," and their quick departure. The trial court did not err when it concluded that the stop was justified by reasonable suspicion of criminal activity and, therefore, denied defendant's motion to suppress.

Affirmed.

**TOOKEY, J.,** dissenting.

The majority holds that Officer McCowan reasonably suspected that defendant had been engaged in illegal drug activity based on "McCowan's personal observations, his knowledge of the informant's report to dispatch, and his personal training and experience." 277 Or App at 405. Although the standard for reasonable suspicion justifying a stop of a person is "less than the standard of probable cause to arrest," a "stop is unlawful unless it meets an objective test of reasonableness based on *observable* facts." *State v. Holdorf*, 355 Or 812, 823, 333 P3d 982 (2014) (emphasis added). The state has the burden to prove that McCowan reasonably suspected that defendant was engaged in illegal drug activity. *See State v. Guest*, 207 Or App 395, 399, 142 P3d 482 (2006) (the state "has the burden of establishing the existence of reasonable suspicion"). I disagree with the

majority's conclusion that the state established the existence of reasonable suspicion, and I respectfully dissent.

In this case, the state was unable to show (1) that McCowan himself observed anything suspicious; (2) that the informant had observed or was competent to identify illegal drug activity; or (3) that McCowan's training and experience would permit him to draw any reasonable inferences regarding illegal drug activity. In the absence of such proof, this is a case in which the officer effectively deferred to the intuition of a civilian informant. Our state constitution demands more than that to justify police intrusion on a person's liberty interest.

Around noon, McCowan was told by dispatch that a named informant reported what he believed to be a drug deal in the George Fox University parking lot. The informant reported that a woman drove a van into the parking lot and then a man on a bicycle rode up and got into the van. The man reportedly "pulled something out of * * * either his pocket or his pants," they both looked into his lap, and then "they were smoking something." Within a couple of minutes, McCowan arrived in the parking lot, defendant got out of the van, and the van drove off. Both defendant and the van matched the description given by the informant, but McCowan did not see any of the activities described by the informant in the report. As defendant walked toward his bicycle, McCowan parked his patrol car near defendant and began questioning him about what he was doing inside the van. During that questioning, the state concedes that defendant was stopped. When defendant eventually admitted to possessing methamphetamine, he was arrested and charged.

First, that stop was based on information provided by an informant, and the state failed to prove that McCowan observed anything suspicious that would be related to drug activity. In *State v. Clink*, 270 Or App 646, 651, 348 P3d 1187, *rev den*, 358 Or 69 (2015), after we stated that the officer could "take the informant's report into consideration" that two people in a car were "smoking something," we concluded that the officer had reasonable suspicion because the officer *"did not base his suspicion of defendant solely on the*

*informant's report.*" (Emphasis added.) The other circumstances that contributed to the officer's reasonable suspicion included the officer's "knowledge that [the] defendant's passenger was a methamphetamine user" and the "defendant's 'elaborate,' 'deliberate,' and 'furtive' movements" to conceal something after he spotted the officer. *Id.* at 651-52. We also explained that a known methamphetamine user's presence in the car supported the officer's suspicion that the "informant had seen [the] defendant smoking methamphetamine, and not something more innocuous." *Id.* at 652.

Here, McCowan never observed any of the activities described by the informant in the report or any other circumstances that would make his suspicion objectively reasonable. *See State v. Hames*, 223 Or App 624, 635, 196 P3d 88 (2008) ("The totality of the circumstances also includes what an officer does not observe."). When McCowan stopped defendant, he did not know whether defendant or the driver of the van were known drug users and, thus, he could not infer from his knowledge of the people present that they were smoking illegal drugs rather than "something more innocuous" prior to his arrival. *Clink*, 270 Or App at 652.

Furthermore, McCowan's observation that when he pulled into the parking lot defendant got out of the van and walked toward his bicycle carries minimal weight. McCowan testified that he was not sure whether defendant and the driver began to leave because of his arrival. Even if it is reasonable to infer that defendant sought to avoid McCowan, as we explained in *State v. Espinoza-Barragan*, 253 Or App 743, 750, 293 P3d 1072 (2012), "a person's legal efforts to avoid being stopped by or questioned by the police" contributes "little, if any weight toward reasonable suspicion." Here, defendant's actions to get out of the van and walk to his bicycle were never described by McCowan as "'elaborate,' 'deliberate,' and 'furtive' movements" that would indicate that defendant was concealing something illegal or attempting to evade McCowan. *Clink*, 270 Or App at 652.

Moreover, McCowan never testified that the area of the arrest was known for drug activity, which would support an inference that what defendant was smoking or

transferring was illegal. *See State v. Rudnitskyy*, 266 Or App 560, 565, 338 P3d 742 (2014), *rev den*, 357 Or 112 (2015) (reasonable suspicion satisfied where informant reported seeing drug transaction, officer knew location was commonly used for heroin sales, officer saw defendant attempt to hide plastic straw, and officer knew that plastic straws are commonly used to smoke heroin). Defendant's presence at lunchtime in a university parking lot that is not commonly associated with drug use or sales, does not indicate that defendant was smoking or transferring something illegal. McCowan's observations do not support a determination of reasonable suspicion.

Second, the state failed to prove that the informant observed any illegal drug activity or was competent to identify illegal drug activity based on what the informant had observed. This case is distinguishable from *State v. Lichty*, 313 Or 579, 585, 835 P2d 904 (1992), in which the Supreme Court rejected the defendant's argument that, because the informant was not an expert in drug identification, the officer could not reasonably rely on the informant's statement that she saw cocaine in a wallet. "The innocent explanations for carrying around in one's wallet a transparent small bag of white powder are not likely ones, * * * [m]oreover, the informant did state her factual conclusion identifying directly that what she saw was the exact illegal substance, leaving only the question whether she was competent to identify it." *State v. Carter/Grant*, 316 Or 6, 13 n 7, 848 P2d 599 (1993) (citing *Lichty*, 313 Or at 585). The court explained:

> "There was evidence presented in this case that members of society have a general knowledge regarding the appearance of cocaine. Storie testified that she believed that the powdery substance in the bag that she saw was cocaine because of her knowledge as to the appearance of cocaine from '[w]atching the news, [and] watching t.v. programs. You see it every day on the news.' When Storie, a named informant, told Derby that she saw 'a bag of coke,' she was saying that she saw a transparent bag, small enough to be put in a wallet, that contained a white powdery substance. Having heard that statement, it was reasonable for Derby to add his *own* expertise concerning the way illegal drugs are carried and to infer that the white powdery substance could be cocaine."

*Lichty*, 313 Or at 585 (emphasis and brackets in original). The court concluded that the evidence, in light of the officer's training and experience, gave the officer a reasonable suspicion that the defendant's wallet contained cocaine and that the defendant was committing a crime. *Id.*

There are far more innocent explanations for two people meeting briefly around lunchtime in a university parking lot than innocent explanations for carrying around in one's wallet a small transparent bag of white powder. Furthermore, unlike the informant in *Lichty*, the informant in this case did not base his factual conclusion that defendant was smoking or doing something illegal by "identifying directly" that what he saw was "the exact illegal substance" or activity. *Carter/Grant*, 316 Or at 13 n 7 (citing *Lichty*, 313 Or at 585). As to the question of whether the informant was competent to identify illegal drug activity, no evidence was "presented in this case that members of society have a general knowledge" regarding the characteristics of illegal drug activity and, thus, the state failed to prove that the informant could be competent to identify illegal drug activity. *Lichty*, 313 Or at 585. Finally, unlike the officer in *Lichty*, McCowan's explanation of his training and experience was insufficient.

Third, and as just noted, the state failed to prove how McCowan's pertinent training and experience permitted him to make a reasonable inference—based on his personal observations or his knowledge of the informant's report to dispatch—that illegal drug activity had occurred. The state must prove the relevance of the officer's training and experience "through admissible evidence of specific articulable facts that permit an officer to make a reasonable inference based on the officer's pertinent training and experience." *Holdorf*, 355 Or at 829; *State v. Daniels*, 234 Or App 533, 541, 228 P3d 695, *rev den*, 349 Or 171 (2010) ("[T]he phrase 'training and experience' * * * is not a magical incantation with the power to imbue speculation, stereotype, or pseudoscience with an impenetrable armor of veracity."). In other words, "the extent to which an officer must explain the basis of his or her 'training and experience' knowledge * * * varies from case to case across a broad spectrum," *Daniels*,

234 Or App at 542, because "a police officer's training and experience, as relevant to proving particular circumstances, is not presumed based solely upon a police officer's employment status," *Holdorf,* 355 Or at 829.

At trial, the state asked McCowan about his training and experience with illegal drugs. McCowan testified that, during 16 weeks of basic police training, he spent "a significant amount of time" learning about the "habits of drug users and people that possess drugs, places they frequent, [and] things like that," but could not recall how much of that time was spent learning about drug detection. After McCowan testified that he had investigated drug crimes in the one and one-half years that he had been on patrol, the state asked whether McCowan himself was "familiar with the appearance of or the ways and manners in which methamphetamine is used" and "the method of transferring methamphetamine or delivering methamphetamine from one person to another." McCowan replied, "[y]es, I am," but did not elaborate any further. On cross-examination, defendant asked McCowan, "You said you have experience with [methamphetamine] so therefore you have knowledge of how drugs are transferred. Have you ever seen a drug transaction occur in front of you?" McCowan responded, "not one that I can recall in particular."

Here, as noted above, no evidence was presented to show that drug deals are a matter of common knowledge, and the purpose of McCowan's testimony was to establish that he was able to recognize more from the informant's reported facts and his observations than a person would commonly recognize. Consequently, further explanation of the basis of McCowan's belief that defendant was involved in illegal drug activity and further explanation of the pertinent training or experience that guided that belief were needed. At no point did the state offer testimony to draw a factual nexus between McCowan's pertinent training or experience and specific articulable facts. *See Holdorf,* 355 Or at 829 (officer had "substantial experience" with a distinctive behavior referred to as "tweaking" and, therefore, could infer that the defendant's nervous and fidgety behavior and lack of eye contact was from methamphetamine use); *Lichty,* 313 Or at 582, 585 (officer knew from his training

and experience that cocaine "is usually packaged in small amounts" in baggies so he could infer that "the white powdery substance" an informant saw in a small transparent bag was cocaine); *State v. McHaffie*, 271 Or App 379, 387, 350 P3d 600 (2015) (officer had a "decade of experience" relating to arrests for drug possession in which he observed a specific behavior known as "indexing" and had discovered drugs in the location indicated by that conduct).

As previously noted, "a police officer's training and experience, as relevant to proving particular circumstances, *is not presumed based solely upon a police officer's employment status.*" *Holdorf*, 355 Or at 829 (emphasis added). The majority's conclusion does just that. It allows the state to prove the relevance of McCowan's personal observations and his knowledge of the informant's report with evidence of his minimal basic training in detecting illegal drug activity despite the fact that, in the one and one-half years that he had been on patrol investigating drug crimes, McCowan could not recall ever seeing a drug transaction.

The majority's holding departs from the principles articulated by the Supreme Court in *Holdorf* and *Lichty*, which require more than an informant's speculation and an officer's general references to training and experience. In this case, police stopped defendant based on a report that defendant met someone in a parking lot and smoked something. In my view, those circumstances did not justify police intrusion on defendant's liberty interest, and I respectfully dissent.