Argued and submitted October 15, 2019, affirmed June 30, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CURTIS LEE HOLLINS,
*Defendant-Appellant.*

Jackson County Circuit Court
17CR75575; A167518

493 P3d 535

Following the denial of his motion to suppress evidence obtained during a consent search, defendant entered a conditional guilty plea to felon in possession of a restricted weapon, ORS 166.270, reserving his right to appeal the trial court's ruling. On appeal, defendant argues that the officer lacked reasonable suspicion to initiate the stop that led to his consent. The state responds that the officer's actions were supported by reasonable suspicion, and, in the alternative, that reasonable suspicion was not required, because the encounter between the officer and defendant was not a seizure as a matter of law. *Held*: The Court of Appeals assumed, without deciding, that defendant was seized by the time the officer began questioning him and concluded that the officer had reasonable suspicion to detain defendant at that time.

Affirmed.

Timothy Barnack, Judge.

Mark Kimbrell, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Dashiell Farewell argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Hannah K. Hoffman, Assistant Attorney General.

Before DeHoog, Presiding Judge, and Mooney, Judge, and Kamins, Judge.*

DeHOOG, P. J.

Affirmed.

_____

* Kamins, J., *vice* Hadlock, J. pro tempore.

## DeHOOG, P. J.

Following the denial of his motion to suppress evidence obtained during a consent search, defendant entered a conditional guilty plea to felon in possession of a restricted weapon, ORS 166.270, reserving his right to appeal the trial court's ruling. On appeal, defendant argues that the officer lacked reasonable suspicion to initiate the stop that led to his consent. The state responds that the officer's actions were supported by reasonable suspicion, and, in the alternative, that reasonable suspicion was not required, because the encounter between the officer and defendant was not a seizure as a matter of law. As explained below, we assume without deciding that defendant was seized by the time the officer began questioning him, and we conclude that the officer had reasonable suspicion to detain defendant at that time. We therefore affirm.

We review a trial court's denial of a motion to suppress for legal error. *State v. Taylor*, 308 Or App 61, 62, 479 P3d 620 (2020) (citing *State v. Maciel-Figueroa*, 361 Or 163, 165-66, 389 P3d 1121 (2017)). "We are bound by the court's explicit and implicit factual findings if there is constitutionally sufficient evidence in the record to support them." *Taylor*, 308 Or App at 62. We state the undisputed facts from the suppression hearing in accordance with that standard.

At about 2:00 p.m. on a Monday, Officer Boyd was on patrol when he saw defendant conversing with a woman in a parking lot near an Albertson's grocery store and several other establishments. One of the other businesses that shared the parking lot was a "Purple Parrot," a bar and gambling establishment. The Purple Parrot stood out to Boyd because he had personally been involved in cases there, many of which included drug or weapons offenses. Boyd testified that, as a general matter, "Purple Parrots are hot spots for the police department," and, at this particular Purple Parrot, he had arrested people for various offenses—both inside and in the parking lot—about every other week.

Boyd noticed that the pair was located in between the Purple Parrot and some restaurants and saw them engage in "some sort of hand-to-hand transaction." More

specifically, Boyd saw defendant and the woman converse, engage in a shake or a slap of hands, and then part ways. Boyd saw the woman walk towards the Purple Parrot while defendant walked towards a Subway sandwich shop.

According to Boyd, over the course of a year, he had observed "[m]aybe ten" hand-to-hand drug transactions. Boyd testified that, based on his training and experience with drug deals, including training with the Medford Area Drug Gang Enforcement (MADGE) team, "often when drug deals happen, like hand-to-hand transactions, there's a little bit of conversing, there's either like a shake of the hand or a slap, and then [they] ultimately go their separate ways." Boyd explained that defendant and the woman had engaged in exactly that type of behavior.

Upon observing that conduct, Boyd stepped out of his patrol car to contact defendant. Boyd called out to defendant, "Hey, dude. Let me chat with you for a second." Defendant started to walk towards Boyd, and Boyd noticed that defendant was holding some cash in his hand. Boyd testified that the cash "kind of enhanced [his] reasonable suspicion of what [he had] observed." Boyd asked defendant what he and the woman were doing, and defendant said that he "just gave her a couple dollars to go play the game." Boyd then asked defendant if they had exchanged any drugs or anything like that, and defendant said "No." Next, Boyd asked defendant if he could "take a peek" at defendant's identification and asked if he was on probation. Defendant provided his identification and informed Boyd that he was on probation and in good standing. Boyd ran defendant's name through dispatch and ran a warrants search, which confirmed that defendant was on felony probation for weapons and narcotics offenses. During that time, Corporal Shilder arrived at the scene as a cover officer.

Next, Boyd asked defendant for consent to search "his wallet and pockets just to verify that he didn't have any outstanding drugs [*sic*] or something of that nature on him." Defendant gave Boyd his consent to a search, and Boyd discovered a "black leather sap," a spring-assisted folding knife, and a pocketknife in defendant's pockets. Defendant was subsequently arrested for a probation violation, and the

state charged him with two counts of felon in possession of a restricted weapon, ORS 166.270.

Defendant moved to suppress the evidence that Boyd had obtained in the course of his consent search, contending that it was the product of an unlawful seizure. Defendant argued that Boyd lacked reasonable suspicion to detain him for investigative purposes and therefore had violated his rights under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. Specifically, defendant contended that "[u]nder the totality of the circumstances Officer Boyd did not possess objective reasonable suspicion that the crime of [d]elivery had just occurred." The state argued that Boyd had reasonable suspicion for the stop because he "saw a hand-to-hand transaction, saw that it involved cash, [and it was] in the vicinity of an area that's a high crime area." According to defendant, however, Boyd had no reason to associate him with the Purple Parrot, and the potentially innocuous hand-to-hand transaction that Boyd had seen was not enough to support reasonable suspicion. The trial court agreed that Boyd's conduct constituted a stop, but it denied defendant's motion to suppress, making no express findings. Thereafter, defendant entered a conditional plea of guilty to Count 1, reserving his right to challenge the court's ruling on appeal; Count 2 was dismissed.

On appeal, defendant contends that the trial court erred in denying his motion to suppress. Defendant reprises the arguments that he made to the trial court and contends that Boyd lacked reasonable suspicion to seize him. In response, the state maintains that the trial court correctly denied defendant's motion because Boyd's actions were supported by reasonable suspicion. The state alternatively contends that reasonable suspicion was not required, because, as a matter of law, the encounter between Boyd and defendant was not a seizure. For purposes of this opinion, we need not determine whether the trial court correctly concluded that defendant was seized. Rather, we assume, without deciding, that Boyd seized defendant and analyze whether that detention was supported by reasonable suspicion.

Under Article I, section 9, of the Oregon Constitution, an officer may stop a person to investigate "if the officer has 'reasonable suspicion' that the person has committed or is about to commit a crime." *State v. Miller*, 363 Or 374, 379, 422 P3d 240 (2018). "An officer has reasonable suspicion when the officer 'can point to specific and articulable facts that give rise to a reasonable inference that the defendant committed or was about to commit a specific crime or type of crime.'" *State v. Kreis*, 365 Or 659, 665, 451 P3d 954 (2019) (quoting *Maciel-Figueroa*, 361 Or at 165); *see also State v. Walker*, 277 Or App 397, 402, 372 P3d 540, *rev den*, 360 Or 423 (2016) ("[R]easonable suspicion exists when the officer can point to 'distinctive behavior' associated with unlawful activity that permits the officer 'to make a reasonable inference based on the officer's pertinent training and experience' that criminal activity may be afoot." (Quoting *State v. Holdorf*, 355 Or 812, 829, 333 P3d 982 (2014).)). "The officer must have a subjective belief that the person stopped has committed, or is about to commit, a crime, and that belief must be objectively reasonable under the totality of the circumstances." *Kreis*, 365 Or at 665. In our review, we consider each of the specific facts articulated by the officer, individually and together, to determine as a matter of law whether the officer's subjective belief was objectively reasonable. *State v. Bowen*, 308 Or App 505, 509, 481 P3d 370 (2021).

In this case, defendant does not dispute that Boyd subjectively believed that he had committed a crime. And, in accordance with our standard of review, we presume that the court implicitly found that the subjective component of the reasonable suspicion standard had been met here, *i.e.*, that Boyd subjectively believed that defendant had engaged in a drug transaction. *Taylor,* 308 Or App at 66. Focusing on the objective component of reasonable suspicion, defendant argues that it was not objectively reasonable for Boyd to suspect that defendant was involved in a drug transaction based on "a conversation and hand-to-hand exchange between two individuals that [Boyd] did not know, in a parking lot associated with multiple legitimate businesses, and in broad daylight." In support of its responsive argument that defendant's seizure was justified, the state points to the following facts:

> "(1) Officer Boyd made drug arrests at the Purple Parrot every other week; (2) Officer Boyd had specialized training to identify hand-to-hand transactions and had worked with the Medford drug task force; (3) he saw a hand-to-hand transaction that appeared consistent with what he had learned from his training; (4) he saw defendant with a handful of cash immediately after the transaction; and (5) the transaction occurred in a high-crime area."

Our task is to determine whether those facts, when viewed in their totality, objectively support Boyd's suspicion that defendant had engaged in a drug transaction. We conclude that, although none of the facts articulated by Boyd are sufficient on their own, when viewed in their totality, the facts known to Boyd give rise to reasonable suspicion.

Defendant contends that this case closely resembles the facts in *State v. Jacobs*, 187 Or App 330, 67 P3d 408 (2003). In *Jacobs*, officers observed three men on a sidewalk near a bank and automated teller machine at approximately 6:00 p.m. *Id.* at 332. The officers considered the "entire 'downtown area' as a 'high drug traffic area.'" *Id.* The men were huddled close together and looking around nervously when one of them, the defendant, passed money to one of the others. *Id.* Suspecting that a drug transaction was taking place, the officers approached the group and one officer proceeded to search the defendant and located a plastic bag containing marijuana. *Id.* On appeal, the defendant argued that the officer's search was unlawful because the officer lacked *probable cause* to *arrest* him. *Id.* at 333. We agreed, noting that there was no evidence that the location that the exchange occurred in was the site of "continuous, hand-to-hand drug traffic" and that the defendant was merely observed exchanging money near an ATM at around 6:00 p.m. *Id.* at 335. We concluded that those facts, even when combined with the defendant's furtive actions, did not provide the officer with probable cause. *Id.* at 336.

Notably, the issue in *Jacobs* was whether the officers had probable cause, whereas here the question is whether Boyd had reasonable suspicion. And, as the Supreme Court has explained, the reasonable suspicion standard justifying a police intrusion on the liberty interest of a person who is stopped "was intended to be less than the standard of probable

cause to arrest." *Holdorf*, 355 Or at 823. "Reasonable suspicion does not require that the articulable facts observed by the officer *conclusively* indicate illegal activity, but, rather, only that those facts support the *reasonable inference* that a person has committed a crime." *State v. Hammonds/Deshler*, 155 Or App 622, 627, 964 P2d 1094 (1998) (emphases in original); *see also State v. Westcott*, 282 Or App 614, 618, 385 P3d 1268 (2016), *rev den*, 361 Or 486 (2017) ("Reasonable suspicion is a relatively low barrier, less demanding than probable cause; it does not require certainty about the significance of particular facts." (Internal quotation marks and brackets omitted.)). We note that, although we concluded in *Jacobs* that the officer did not have probable cause to arrest and search the defendant, we gave no indication that the facts were insufficient to *stop* the defendant in order to investigate further.[1]

That said, this case also differs from *Jacobs*. Unlike the officer in *Jacobs*, who described the entire downtown area of Salem as a high crime area, Boyd described Purple Parrots generally as "hot spots" for drug and weapon crimes and further indicated that, at that particular Purple Parrot location, he had been making arrests about every other week.

We agree with defendant that his mere presence outside of a Purple Parrot establishment is of little significance when viewed on its own. *See State v. Goguen*, 308 Or App 706, 713, 481 P3d 1011 (2021) (stating that the defendant's presence in a Purple Parrot parking lot—where the officer testified that "it was 'not uncommon' for people to engage in drug activity"—was of little consequence when the officer did not specifically identify that particular location as a high crime area). "We have repeatedly said that a person's presence in a location associated with drug activity is insufficient to support an objectively reasonable belief that that person is himself or herself engaged in drug activity." *State v. Davis*, 286 Or App 528, 536, 400 P3d 994 (2017) (internal quotation marks omitted). "Rather, the police must also identify particularized facts about the defendant that support

---

[1] As in *Jacobs*, we express no opinion here whether the facts of that case would have supported reasonable suspicion.

the inference that the defendant's presence at the location is indicative of criminal activity." *State v. Washington*, 284 Or App 454, 464, 392 P3d 348, (2017). In this case, Boyd's testimony provided that nexus. Boyd suspected that a drug transaction had taken place not only because of defendant's close proximity to the Purple Parrot, but because he had observed him engage in a distinctive hand-to-hand transaction with a woman who, afterwards, had walked towards the Purple Parrot.

Defendant acknowledges that we have concluded that an officer's observation of a hand-to-hand transaction can establish reasonable suspicion. *See State v. Briggs*, 229 Or App 660, 666, 212 P3d 1276, *rev den*, 347 Or 446 (2009) (concluding that at 2:00 a.m., in an area where drug dealing was common, officers had reasonable suspicion after observing defendant hand something to bicyclists from his car and then drive away when officers approached, while the bicyclists departed in different directions); *State v. Loud*, 149 Or App 250, 252-55, 942 P2d 814, *rev den*, 326 Or 58 (1997) (reasonable suspicion to investigate a drug crime when defendant had a brief visit with a suspicious, unidentified person in an area known for drug sales, defendant did not stop his car for four blocks, and defendant made furtive gestures suggesting that he was passing something to the passenger in his car before finally stopping); *State v. Norman*, 66 Or App 443, 447, 674 P2d 626, *rev den*, 296 Or 712 (1984) (reasonable suspicion to stop defendant where officer had observed defendant engage in what his training and experience told him was "classic hand-to-hand sale of narcotics" between defendant and another person, in front of a known hangout for drug dealers and users (internal quotation marks omitted)). But, according to defendant, because the hand-to-hand transaction here occurred "in a parking lot associated with multiple businesses, in broad daylight, at 2:00 in the afternoon," between people unknown to Boyd, Boyd's suspicion was not objectively reasonable. We disagree.

Boyd testified that, based on his training and experience, the transaction that he observed was indicative of a drug transaction. An officer's training and experience may be taken into consideration when determining reasonable suspicion. *Walker*, 277 Or App at 401-02. However, an

officer's training and experience is not presumed; it must be established through "evidence of specific articulable facts that permit an officer to make a reasonable inference based on the officer's pertinent training and experience." *Holdorf*, 355 Or at 829. "Put another way, an officer must offer something—either by drawing on the officer's training and experience or other specific and articulable facts about the encounter—to show why a defendant's 'otherwise innocuous' conduct was, in fact, more suggestive of criminal activity than it appears." *Washington,* 284 Or App at 464 (quoting *State v. Alvarado*, 257 Or App 612, 631, 307 P3d 540 (2013)). Our opinion in *Walker* is instructive.

In *Walker*, an informant called to report a suspected drug deal in a University parking lot around 12:00 p.m. 277 Or App at 398. The informant reported that a white van driven by a woman had pulled into the parking lot, and the defendant had ridden his bicycle up to the van and entered it. *Id.* The informant saw the defendant reach into his pants and remove something, which the woman examined; the woman and the defendant then began "smoking something." *Id.* An officer arrived and saw the defendant exit the van and the woman drive the van away. *Id.* The defendant was ultimately arrested and admitted to having methamphetamine in his pocket. *Id.* at 399. At the suppression hearing, the officer testified about his training and experience and how the information that he had received from the informant was consistent with the "way a drug deal happens." *Id.* We concluded that the officer's stop was supported by reasonable suspicion, noting that the officer's training and experience, combined with the informant's observations, allowed him to "describe the 'observable' and 'articulable' facts that led him to suspect that defendant and the van's driver had engaged in illegal drug activity." *Id.* at 405 (quoting *State v. Valdez*, 277 Or 621, 628, 561 P2d 1006 (1977)). That is, "the detention was based on a series of events that, considered in combination, an officer with training and experience regarding drug transactions could identify as distinctively associated with criminal activity: the quick meet-up of two people in a parking lot, their brief examination of something that one of them pulled from his clothing, their subsequent 'smoking something' and their quick departure." *Id.* at 405.

Like the officer in *Walker*, Boyd described his past training and experience, which included on-the-job training with the MADGE team and personal observations of hand-to-hand drug transactions. Boyd described what a typical drug transaction involved and indicated that the encounter that he observed between defendant and the woman was typical for such transactions. True, the transaction occurred in the middle of the day between two people unknown to Boyd, and he did not see what the two exchanged. However, Boyd also noted the distinctive character of the hand-to-hand exchange and its proximity to a specific Purple Parrot that he associated with illegal drug activity. Further, as Boyd approached defendant, he noticed a handful of cash in his hand, which enhanced Boyd's initial suspicion that a drug transaction had taken place. We conclude that those facts, when viewed in their totality, objectively support Boyd's subjective suspicion. *See also Norman*, 66 Or App at 445-47 (concluding that officer had reasonable suspicion to stop the defendant after officer saw, in light of his training and experience, what looked like a "classic hand-to-hand sale of narcotics" taking place at a known hangout for drug dealing, despite the fact that the officer did not see what had been exchanged nor did the officer know the people involved in the transaction).

Although defendant's statement to Boyd—that he had just given the woman, who he said was his girlfriend, some money to play the games—offers an innocent explanation for the hand-to-hand transaction, that does not negate Boyd's reasonable suspicion. *See State v. Villemeyer*, 227 Or App 193, 198, 205 P3d 49 (2009) ("The fact that there might be innocent explanations for conduct does not mean that the conduct cannot also give rise to reasonable suspicion of criminality." (Internal quotation marks omitted.)); *see also State v. Faubion*, 258 Or App 184, 194, 308 P3d 337 (2013) (stating that "the existence of possible lawful explanations for circumstances or behavior does not negate the development of reasonable suspicion of criminal activity"). Boyd articulated specific facts about his training and experience and the circumstances he observed and how, collectively, they led him to believe that the hand-to-hand transaction he had seen was a drug transaction. Those facts objectively

supported Boyd's belief and, therefore, the trial court did not err in denying defendant's motion to suppress.

Affirmed.